*557 OPINION OF THE COURT
Ira Gammerman, J.
In this action to recover damages for personal injuries sustained by infant plaintiff, the claims against all defendants except Billy the Kid, Inc. (BTK) were disposed of prior to the return of the jury verdict.[1] The action against defendants Comack Arena Marketing, Inc., Thompson Company, Mighty Mac, Inc., Michael Santaly and Rita Santaly were dismissed. The claims against defendants Talon Corporation, Salant Corporation and Travis Textile, Inc. were settled prior to trial for a total amount of $900,000. During trial, indeed while the jury was deliberating, the action against defendant Union Underwear, Inc. (Union) and the Niske defendants was settled with Union becoming obligated to pay a maximum of $500,000 and the Niskes paying $100,000. The jury returned a verdict for plaintiff in the amount of $2,600,000 and apportioned liability in the following manner: 30% against the Niske defendants, 35% against Union and 35% against BTK. The jury found no liability on the part of the defendants settling prior to trial inasmuch as no proof was offered with respect to their responsibility.
The issue raised, therefore, is the manner is which General Obligations Law § 15-108 is to be applied. It is the position of BTK that it is entitled to credit for both the equitable liability finding against the Niske defendants and Union (65% of $2,600,000 or $1,690,000) plus the $900,000 paid by the defendants settling prior to trial, for a total of $2,590,000.
Plaintiff, on the other hand, maintains that BTK must elect, with respect to all settling defendants, whether it wishes credit for the actual settlement amounts or their equitable liability. Thus, argues plaintiff, BTK is entitled to credit for either $1,500,000 (the settlement amounts) or $1,690,000 (the equitable liability). He argues that what he refers to as "a hybrid formula of allocation” was not intended by the statute and should not be permitted.
Defendant Union joins plaintiff in this argument.[2] It further argues that, at the very least, the $900,000 which was agreed *558 to be paid before trial by the defendants against whom no liability was assessed by the jury should be deducted from the verdict of $2,600,000 and that defendant BTK should be required to pay 35% of that reduced amount of $1,700,000, or $595,000.
General Obligations Law § 15-108 provides as follows:
"§ 15-108. Release or covenant not to sue
"(a) Effect of release of or covenant not to sue tortfeasors. When a release or a covenant not to sue or not to enforce a judgment is given to one of two or more persons liable or claimed to be liable in tort for the same injury, or the same wrongful death, it does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms expressly so provide, but it reduces the claim, of the releasor against the other tortfeasors to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, or in the amount of the released tortfeasor’s equitable share of the damages under article fourteen of the civil practice law and rules, whichever is the greatest.
"(b) Release of tortfeasor. A release given in good faith by the injured person to one tortfeasor as provided in subdivision , (a) relieves him from liability to any other person for contribution as provided in article fourteen of the civil practice law and rules.
"(c) Waiver of contribution. A tortfeasor who has obtained his own release from liability shall not be entitled to contribution from any other person.” (Emphasis added.)
The purpose of the statute was to encourage settlements and assure that no nonsettling tort-feasor would be responsible for more than his equitable share of the damages. Courts construing the statute have uniformly held that a nonsettling defendant against whom a verdict is obtained is entitled to reduce the amount of the recovery against him or her by the full amount of any settlement by other parties, even if the settling party was found to be not liable at all (Werner v Our Lady of Lourdes, 60 AD2d 791 [4th Dept 1977]), or by the equitable share of the damages attributable to the settling party, even if that party settled without paying any consideration to the plaintiff (Killeen v Reinhardt, 71 AD2d 851 [2d Dept 1979]).
In Werner v Our Lady of Lourdes (supra) the infant plaintiff was struck in the mouth with a hockey stick by another *559 student, Allen, during a break in gym class. He sued both Allen and the school. While the jury was deliberating, plaintiff settled with Allen for $2,000. The jury returned a verdict of no cause of action against Allen and $3,000 against the school. It was held that the amount of the settlement paid by defendant Allen was properly applied to reduce the amount of the judgment against the school.
Killeen v Reinhardt (supra) was a medical malpractice action against three doctors, Reinhardt, Nieblas and Muojo, and a hospital. At a pretrial conference, plaintiff settled with Drs. Reinhardt and Nieblas for $265,000, and discontinued the action against Dr. Muojo for no consideration. The jury returned a verdict against the remaining defendant, the hospital, in the sum of $650,000. The jury apportioned liability as follows: Drs. Reinhardt and Nieblas 30%; Dr. Muojo 20%; and the hospital 50%.
The plaintiff attempted to enter judgments against the hospital in the sum of $325,000 (50% of the $650,000 verdict). The trial court resettled the judgment in the following manner: it reduced the $650,000 verdict first by the $265,000 settlement paid by Drs. Reinhardt and Nieblas (the $265,000 settlement paid by them exceeded their equitable share of the damages) and then by $110,000 representing its calculation of Dr. Muojo’s equitable share. The majority of the Appellate Division concluded that Dr. Muojo’s equitable share was properly calculated. Mr. Justice Suozzi, in a concurring opinion, pointed out that the defendant hospital was, pursuant to General Obligations Law § 15-108, entitled to a reduction by the equitable share of Dr. Muojo’s liability, 20% of $650,000 or $130,000 rather than the $110,000 calculated by the trial court and erroneously approved by the Appellate Division majority. Thus, both the amount paid and the equitable liability (although incorrectly calculated with respect to defendant Muojo) of the settling defendants (whichever was greater) was deducted from plaintiffs recovery.
Thus, contrary to plaintiffs argument that BTK must choose with respect to all settling defendants between credit for their equitable liability or the amount paid in settlement, it is clear that the statute imposes no such requirement. The term "tort-feasor” is used in the singular and the nonsettling defendant is entitled to credit, with respect to each defendant tort-feasor, for the greater of either the amount paid or the equitable liability. Plaintiff argues that, here, such application of General Obligations Law § 15-108 gives defendant BTK "a *560 free ride”, i.e., it is required to pay only $10,000 although its equitable liability was found to be 35% of $2,600,000 or $910,000. The "free ride” results not solely from the operation of the statute but from the settlements reached by plaintiff with the other defendants. If those settlements had totaled $2,600,000 or more, defendant BTK would have an even freer ride, it would pay nothing. Plaintiff and his attorney made certain decisions concerning the wisdom of accepting a number of settlement offers. In making those decisions plaintiff’s attorney was, or should have been, aware of the provisions of General Obligations Law § 15-108, and the impact of those provisions on the amount which the nonsettling defendant might be required to pay after jury verdict.
With respect to defendant Union’s argument that the $900,-000 settlement should be deducted before apportioning liability, this, indeed, is the method of computation that would have been used if no settlement had been reached between plaintiff and Union while the jury was deliberating. In that case both Union and BTK would have shared in the credit of $900,000. Having settled, however, there is no need for Union to share in that credit. Its liability is determined only by the amount it agreed to pay in settlement. It is only the nonsettling defendant, BTK, who pursuant to General Obligations Law § 15-108, receives that credit.
Thus, the judgment against the nonsettling defendant, BTK, should be computed as follows:
verdict ................................ $2,600,000
less 65%[3] ............................. 1,690,000
less pretrial settlement[4]................ 900,000
balance outstanding
to be paid by BTK $ 10,000
The clerk is, therefore, directed to enter the judgment submitted by defendant BTK providing for the payment to infant plaintiff of $10,000.

. There was also a derivative cause of action for loss of services for which the jury made an award of $200,000 which is not relevant to the issue discussed in this opinion.

. The amount of the Union payment to plaintiff relates to the amount plaintiff receives from BTK. Thus, Union has an interest in maximizing BTK’s liability.

. This represents the equitable share of liability of Union Underwear and the Niske defendants. Since the $600,000 settlement by them is less than their equitable share of plaintiffs damages, pursuant to General Obligations Law § 15-108, defendant BTK is entitled to a reduction of the greater (i.e., 65% of $2,600,000) (see, Killeen v Reinhardt, 71 AD2d 851).

. This represents the $900,000 settlement paid by Talon, Salant and Travis Textile (see, Werner v Our Lady of Lourdes, 60 AD2d 791).