760 F.Supp. 33 (1991)
In re JOINT SOUTHERN AND EASTERN DISTRICT ASBESTOS LITIGATION.
Anna GALLIN, Individually and as Executrix of the Estate of John Gallin, Deceased, Plaintiff,
v.
OWENS-ILLINOIS, INC., Defendant.
No. 87 CV 0450.
United States District Court, E.D. New York.
March 21, 1991.
Michael A. Ponterio, Lipsitz, Green, Fahringer, Roll, Schuller & James, Buffalo, N.Y., for plaintiff.
Mark Weissman, McCarter & English, Newark, N.J., for defendant.

MEMORANDUM AND ORDER
McLAUGHLIN, Circuit Judge[*].
The parties seek an entry of judgment. Fed.R.Civ.P. 58. Accordingly, the Clerk is directed to enter judgment against Owens-Illinois, Inc. in the amount of $0.00.

BACKGROUND
By memorandum and order dated July 26, 1990, this court denied plaintiff's motion to set aside portions of the jury verdict assigning percentages of liability on asbestos-related claims to settling codefendants. 741 F.Supp. 50. Fed.R.Civ.P. 50(b). Despite a request by the court, the parties have not submitted a proposed Order of Judgment for entry against defendant Owens-Illinois, Inc. ("OI"). Part of the problem *34 has been a valuation of settlement amounts and the complications that accrue when a settling codefendant files for bankruptcy.
The total amount of plaintiff's verdict was $239,800.00; $55,000.00 of that verdict was for plaintiff's wrongful death claim. Because New York law entitles plaintiff to pre-verdict interest on her wrongful death claim, the final tally for her award under the jury verdict amounts to $279,400.00. N.Y.Est.Powers & Trust Law § 5-4.3 (McKinney Supp.1990).
Under New York law, however, the judgment against a defendant in a civil asbestos suit for damages "is to be reduced by the amount of plaintiff's settlements with former co-defendants, or by the amount of consideration stipulated in plaintiff's release of them, or by the proportion of fault that the jury attributes to them, whichever is greatest." In re Joint Eastern and Southern Districts Asbestos Litigation, 124 F.R.D. 538, 544 (E.D.N.Y.1989), aff'd, 899 F.2d 1281 (2d Cir.), cert. denied, ___ U.S. ___, 111 S.Ct. 297, 112 L.Ed.2d 250 (1990). In that regard, plaintiff proceeded to trial (and to verdict) against OI alone, after settling with the other five former codefendants. One of the five settling codefendants, Johns Manville Corporation ("JMC" or "Manville"), entered into an agreement with plaintiff to settle for $100,000 (40% to be paid within 90 days of the verdict; 60% to be paid within five years of the initial payment date). The jury found JMC to be 3% liable, which amounts to $8,382.00 of the overall verdict. To date, JMC has not paid any of the settlement amount. Additionally, the Manville trust has gone into bankruptcy, casting doubt on the likelihood of any future payment to plaintiff. In re Johns Manville Corp., et al., 82 B 11656 (BRL). In light of JMC's recent financial predicament, plaintiff and OI disagree over the appropriate offset for JMC under the jury verdict.
OI seeks an offset for the Manville settlement for the total amount stipulated in the release ($100,000). Under OI's approach, the total amount of its offset for all settling defendants amounts to $294,700.00.[1] Because that offset exceeds the jury verdict of $279,400.00, OI would pay nothing under the verdict. Williams v. Niske, 147 Misc.2d 556, 557 N.Y.S.2d 1006 (1989).
Plaintiff emphasizes that because of the Manville bankruptcy (and the likelihood of little or no payment under the JMC settlement), the actual settlement amount is zero. Plaintiff concludes, therefore, that OI should be entitled to a JMC set off of only the 3% liability (amounting to $8,382.00) allocated by the jury to JMC and upheld by this court. To prevent any possible future windfall, plaintiff agrees to assign to OI her right to any future payment that JMC may make.

DISCUSSION
New York's General Obligations Law § 15-108(a) provides:
(a) Effect of release of or covenant not to sue tortfeasors. When a release or a covenant not to sue or not to enforce a judgment is given to one of two or more persons liable or claimed to be liable in tort for the same injury, or the same wrongful death, it does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms expressly so provide, but it reduces the claim of the releasor against *35 the other tortfeasors to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, or in the amount of the released tortfeasor's equitable share of the damages under article fourteen of the civil practice law and rules, whichever is the greatest.
Plaintiff argues that JMC's bankruptcy, which occurred after the $100,000 settlement was agreed upon, makes the settlement worthless. Therefore, runs the argument, no offset for the Manville settlement should be made. The court rejects this argument. It is reasonable to infer that those dealing with the Manville trust at the time of this litigation were well aware of its financial problems. Indeed, it is likely that plaintiff knew this simply by virtue of accepting a settlement with staggered payments. Even without such insights, "[e]quity will not relieve a party of its obligations under a contract merely because subsequently, with the benefit of hindsight it appears to have been a bad bargain." Raphael v. Booth Memorial Hospital, 67 A.D.2d 702, 703, 412 N.Y.S.2d 409, 411 (2d Dep't 1979); see also Commentary to CPLR 15-108 (recognizing plaintiff takes risks "when he elects to seize the bird in the hand by settling with one of the tortfeasors.").
Plaintiff also contends that, even if Manville were not bankrupt, OI should be entitled to an offset (for the Manville settlement) of only the present value of the settlement. Presumably this would be calculated as of the date of the $100,000 settlement agreement. The offset, therefore, would be for the then-present value of the $40,000 to be paid in 90 days, plus the then-present value of the $60,000 that was to be paid within five years of the initial payment date.
To support this talmudic interpretation of Section 15-108(a), plaintiff relies upon Reinitz v. Arc Elec. Construction Co., 104 A.D.2d 247, 483 N.Y.S.2d 821 (3rd Dep't 1984). Her reliance is misplaced. In Reinitz, the plaintiff entered into a structured settlement requiring one settling defendant to purchase an annuity. To inflate the size of his offset, the non-settling defendant sought to value the release at the matured value of the annuity rather than the actual purchase price specified in the release itself. Id. at 250, 483 N.Y.S.2d at 823. The court found that the amount actually paid for the annuity was the appropriate offset. Reinitz, however, is easily distinguishable because all parties (including the non-settling defendant) stipulated that the amount of the release was the actual purchase price of the annuity.
In the present case, the only stipulated amount was a $100,000 release subject to a 40-60 deferred payment. Indeed, if the $60,000 "postponed" payment were to be invested in an annuity, OI would be entitled to an offset of only $100,000 and not the greater mature value of that annuity. See Kwasny v. Feinberg, 157 A.D.2d 396, 401, 557 N.Y.S.2d 381, 385 (2d Dep't 1990) ("The fact that part of the [stipulated] sum was to be invested in an annuity so that the plaintiff would receive" a much greater amount was found to be irrelevant to the calculations of the reduction in the verdict).
The settlement agreement here explicitly stipulated to $100,000 as the consideration to be paid in return for the release. Nothing in the agreement indicated that the parties intended any later payments under it to be treated as an annuity, valued at a present value or purchase price. The court will not rewrite the settlement agreement or distort the General Obligations Law to achieve the same result.
OI is entitled to an offset for the "amount stipulated by the release," as Section 15-108 provides. That amount is $100,000.

CONCLUSION
Accordingly, judgment shall be entered in this case against OI in the amount of $0.00.
SO ORDERED.
NOTES
[*] Sitting as district judge by designation.
[1] Excluding any offset for Manville, the offset against the remaining settling codefendants is as follows:

 Jury % $ Value of $ Value of $ Amount of
 Defendant of Fault Fault Settlement Offset 
 Keene Corp. 15% $41,910.00 $55,000.00 $55,000.00
 Eagle-Picher 32% 89,408.00 20,000.00 89,408.00
 Owens-Corning 15% 41,910.00 25,000.00 41,910.00
 Empire Ace 3% 8,382.00 6,000.00 8,382.00
 Total offset amount for foregoing four defendants: $194,700.00
 Remainder of verdict after deduction of above: $ 84,700.00