OPINION OF THE COURT
Helen E. Freedman, J.
Over 700 cases arising out of exposure to asbestos-containing products in the New York Naval Shipyard (Brooklyn Navy Yard) during the period 1938 to 1966 filed in both the State and Federal courts were consolidated for all purposes by a *3 joint Federal-State order dated June 1, 1990. Determination on motions and pretrial proceedings were jointly made and plaintiffs were then directed to elect either Federal or State court for trial.
Some plaintiffs had filed in both courts under a system recognized in the New York City asbestos case management order and known as "double filing”. Since jurisdiction obtained against both diverse and nondiverse defendants in State court, approximately 600 plaintiffs elected to proceed to trial in State court.
Cases were divided into three phases — Phase I involved plaintiffs for whom 90% or more of their exposure occurred in the Brooklyn Navy Yard, Phase II involved plaintiffs for whom about half the exposure occurred in the Brooklyn Navy Yard and Phase III involved 10% or less exposure in the Brooklyn Navy Yard. Of the 254 cases in Phase I, 190 selected State court and proceeded to trial as discussed below.
A representative sample of 35 cases was selected for a reverse bifurcated trial in order to establish value with a view toward settlement. One case settled in its entirety but the remaining 34 proceeded to verdict against one or more defendants of some 20 to 40 named defendants with partial settlements achieved during the proceedings. The jury rendered damages verdicts totaling slightly over $73,000,000 which will be remitted according to a formula.
The jury then determined which company’s products had been identified as responsible for each plaintiff’s injury and allocated proportionate shares of liability. Each verdict form included the names of remaining nonsettling defendants, settling defendants, tortfeasors and the plaintiff.*
The liability allocations varied substantially from plaintiff to plaintiff. In a number of cases, the jury apportioned liability among only a few tort-feasors. The four companies that were not fully settled were found liable as follows: the Man-ville Fund, in 32 cases; Owens-Illinois in 3 cases; Keene Corporation in 19 cases; and Fibreboard in 2 cases. The jury also found Owens-Illinois liable in 2 cases and Keene Corporation liable in 14 cases for punitive damages.
*4 (Remittiturs granted pursuant to application.)
There are several threshold issues which must be determined before judgments may be entered in each case. They include: (1) application of General Obligations Law § 15-108 to determine how to calculate offsets to be credited to remaining defendants; (2) treatment to be accorded to the Manville Fund; (3) reduction of future losses to present value; and (4) application of prejudgment interest. Resolution of these issues will enable parties to properly compute or "mold” judgments for submission to the court.
1) General Obligations Law § 15-108
General Obligations Law § 15-108 was designed to encourage settlements, and to assure that no nonsettling tort-feasor would be held responsible for more than its equitable share. General Obligations Law § 15-108 permits a setoff against verdicts of payments made or percentages of fault allocated to released tort-feasors, whichever is greater.
The application of the General Obligations Law in cases such as these which involve multiple settling tort-feasors raises two questions. First, should each settling tort-feasor be considered individually or should the settlement amounts be aggregated? Second, what happens to the liability shares allocated to bankrupt tort-feasors who are not subject to the jurisdiction of this court? If these shares are reallocated among solvent tort-feasors, should settling tort-feasors be included?
The language of the statute provides as follows:
"(a) Effect of release of or covenant not to sue tortfeasors. When a release or a covenant not to sue or not to enforce a judgment is given to one of two or more persons liable or claimed to be liable in tort for the same injury, or the same wrongful death, it does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms expressly so provide, but it reduces the claim of the releasor against the other tortfeasors to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, or in the amount of the released tortfeasor’s equitable share of the damages under article fourteen of the civil practice law and rules, whichever is the greatest.
"(b) Release of tortfeasor. A release given in good faith by the injured person to one tortfeasor as provided in subdivision *5 (a) relieves him from liability to any other person for contribution as provided in article fourteen of the civil practice law and rules.
"(c) Waiver of contribution. A tortfeasor who has obtained his own release from liability shall not be entitled to contribution from any other person.”
Plaintiffs argue that the statute permits them to aggregate all of the settlement paid by each of the tort-feasors, and then to add up all of the percentages of liability allocated to each of the settling tort-feasors and finally, to offset whichever figure is greater. Nonsettling defendants contend that they are entitled to consider each tort-feasor individually and to set off the amount paid or the percentage of liability, whichever is larger. They claim that they are entitled to a credit against the verdict or reduction in joint and several liability for each settling tort-feasor individually including parties who made payments but were not found liable as well as those against whom liability was apportioned but who, in fact, paid no consideration. Invariably, plaintiffs would receive a smaller portion of the verdict from the remaining defendants under the latter construction.
Plaintiffs cite the unpublished affirmance of Scalone v Celotex Corp. (923 F2d 843 [2d Cir, Oct. 30, 1990]) and Mielcarek v Knights (50 AD2d 122 [4th Dept 1975]) in support of their position. Inasmuch as the issue addressed in Mielcarek concerns participation by a settling party in the trial of the action against the remaining tortfeasors and not application of offsets, the case has no precedential value. Scalone, while appearing to accept the lower court’s aggregation, does not confront the issue of which alternative method of computing offsets should be used.
The case of Williams v Niske (147 Misc 2d 556 [Sup Ct, NY County 1989]) specifically addresses the issue of which method of computation comports with the statutory scheme. In that case involving injuries to an infant plaintiff, claims against all defendants except "Billy the Kid, Inc.” were settled prior to the verdict. The action was dismissed against some defendants, three defendant companies settled for $900,000 at the outset, defendant Union settled for $500,000 and defendant Niske settled for $100,000 at the end of the trial. The verdict of $2,600,000 was apportioned 30% against Niske, 35% against Union and 35% against Billy the Kid. The other defendants were not found liable because the $900,000 settle *6 ment occurred prior to trial and no proof was offered against them. Defendant Billy the Kid claimed that it was entitled to the $900,000 offset where no liability was assessed, and a 65% reduction amounting to $1,690,000 for defendants Union and Niske (an amount substantially larger than the $600,000 actually paid). Plaintiff opposed this approach denominating it a "hybrid” since it gave the nonsettling defendant a right to obtain the benefit of each offset individually. The court agreed with Billy the Kid and reduced the $2,600,000 verdict by a total of $2,590,000, leaving only $10,000 to be paid. Plaintiff’s total recovery was, thus, only $1,510,000.
The Williams v Niske (supra) court relied on Killeen v Reinhardt (71 AD2d 851 [2d Dept 1979]) which modified a lower court judgment but approved that portion of the decision which interpreted the General Obligations Law to provide for individual crediting rather than aggregation. The court reasoned that the term "tort-feasor” is used in the singular and that the nonsettling defendant is, thus, entitled to credit with respect to each defendant tort-feasor for the greater of the amount paid or the equitable liability: The court was not impressed with the contention that the nonsettling tort-feasor received a "free ride” or, as is argued here, "a windfall”, stating that plaintiff and his attorney had knowingly made decisions when entering into the settlements.
Relying upon Johnson v Celotex Corp. (124 FRD 538 [ED NY & SD NY 1989], affd 899 F2d 1281 [2d Cir 1990], cert denied — US —, 111 S Ct 297 [1990]) the Honorable Joseph M. McLaughlin, now a Circuit Court Judge, but sitting by designation as a District Judge, adopted the formula set forth in Williams v Niske (supra) in Gallin v Owens-Illinois, Inc. (760 F Supp 33 [ED NY, Mar. 21,1991]).
For the reasons articulated in Williams v Niske (supra), Gallin v Owens-Illinois, Inc. (supra) and Killeen v Reinhardt (supra), this court holds that nonsettling defendants are entitled to consider each settling defendant against whom a percentage of liability was assessed or who paid consideration individually and offset the higher amount in each case.
The next inquiry involving General Obligations Law offsets concerns the allocation of the shares attributed to bankrupt defendants among settling and nonsettling tort-feasors.
New York law as set forth in Gannon Personnel Agency v City of New York (57 AD2d 538) favors inclusion of bankrupt defendants on the verdict sheet. According to Gannon, shares *7 attributed to the bankrupt defendants are distributed among various other defendants found liable by the jury in proportion to their respective shares of liability. Gannon, however, did not address the issue of whether settling defendants should be included in the distribution.
In Austin v Raymark Indus. (US Dist Ct, D Me, Gignoux, J., affd in part and revd in part 841 F2d 1184 [1st Cir 1988]), a case involving multiple asbestos defendants and a Maine statute similar to the General Obligations Law, the Federal District Court found that it was reasonable to apportion shares to settling tort-feasors in order to carry out the jury’s intention. The court by reallocating the share attributed to Unarco, a bankrupt defendant, among both settling and non-settling tort-feasors, reduced the amount to be collected from nonsettling tort-feasors.
The Austin procedure appears to have been adopted by Honorable Charles Sifton in Johnson v Celotex Corp. (supra), when he discovered that a party against whom the jury assessed a 10% share of liability (Celotex), had neither been named nor served with process in the action. Judge Sifton concluded that had Celotex not been on the verdict sheet, the jury would have allocated its share among the remaining tortfeasors (including a comparatively negligent plaintiff) in the same proportion as it had the rest of the verdict and that a proper redistribution should include all those found liable.
It is fair to conclude that this jury would have done the same had the bankrupt defendants not been on the verdict sheet. The court notes that bankrupt defendants’ shares cannot be redistributed among settling parties against whom no liability was found even though settlement funds were received.
2) Manville Fund
For purposes of the 34 cases in this litigation, the Manville Fund was a fully participating defendant. It was treated as such throughout the trial by plaintiffs, codefendants and the court. Thus, it is neither a bankrupt party whose shares should be redistributed nor is it, as defendant Owens-Illinois argues, a settling or settled tort-feasor whose share or payments, when ultimately determined, should be subtracted from the verdict.
When Manville came under the supervision of the Federal District Court in the limited fund proceedings, pursuant to Federal Rules of Civil Procedure, rule 23 (b) (1) (B) plaintiffs *8 and codefendants sought to keep Manville in this trial as a full participant. The court obtained specific permission from the Federal District Judge charged with administering the limited fund proceedings to allow Manville to continue as a defendant. To the extent that the Manville Fund is insolvent at this stage and unable to contribute to a verdict, other nonsettling defendants are jointly and severally liable with appropriate indemnification rights.
There appears to be no question in these cases concerning joint and several liability in that the jury found reckless behavior within the purview of CPLR 1602 (7).
3) Future Losses
Any future losses in excess of $250,000 must be calculated based on the numbers of years of life expectancy and reduced to present value under CPLR article 50-B.
4) Prejudgment Interest
With respect to prejudgment interest calculated pursuant to EPTL 5-4.3 (a) from the date of death, this court rejects the arguments of the various defendants that interest should not start to run from the date of death on claims which had not yet accrued as of that date. (See, Soulier v Hughes, 119 AD2d 951 [3d Dept 1986], and Schmertz v Matteo, 148 Misc 2d 491 [Sup Ct, NY County], which hold that full interest starts to run as of the date of death.) The statute specifically states: "Interest upon the principal sum recovered by the plaintiff from the date of the decedent's death shall be added to and be a part of the total sum awarded.” (EPTL 5-4.3 [a].) In view of the prevailing State law, the court declines to follow Woodling v Garrett Corp. (813 F2d 543 [2d Cir 1987]).
It is noted that wrongful death only includes sums awards for pecuniary and economic loss and not for pain and suffering prior to death. It is the latter which comprises the bulk of these verdicts.
Accordingly, parties shall submit judgments "molded” in accordance with the above decision in an order to be noticed for May 1991.

 All parties except Fibreboard stipulated to include the names of bankrupt defendants whose products had been identified as present in the Brooklyn Navy Yard. The Federal courts trying Brooklyn Navy Yard cases had followed this procedure. (See, Gannon Personnel Agency v City of New York, 57 AD2d 538 [1st Dept 1977], holding that liability should be allocated even as against a judgment-proof debtor; see also, CPLR 1402.)