RAMSAR WILLIAMS, an Infant, by His Father and Natural Guardian, DAVID WILLIAMS, et al., Appellants-Respondents, v ROBERT NISKE et al., Infants, by Their Father and Natural Guardian, "JOHN" NISKE, et al., Defendants, UNION UNDERWEAR COMPANY, INC., Respondent-Appellant, and BILLY THE KID, INC., Respondent.

First Department July 9, 1992

## APPEARANCES OF COUNSEL

*Charles J. Rappaport* of counsel *(Robert A. Katz, Lynn A. Green* and *Julius Gantman* with him on the brief; *Gandin Schotsky & Rappaport, P. C.,* attorneys), for appellants-respondents.

*Richard H. Bakalor* of counsel *(Quirk & Bakalor, P. C.,* attorneys), for respondent-appellant.

*Martin M. McGlynn* of counsel *(Bombara & McGlynn,* attorneys), for respondent.

## OPINION OF THE COURT

Murphy, P. J.

This appeal presents an issue of first impression in this Department as to the application of General Obligations Law § 15-108 (a) in the context of a multiple defendant tort action where all of the defendants except one settled prior to the verdict. To be determined, is the extent of the verdict reduction required by section 15-108 (a) in light of the prior settlements.

The jury returned a $2.6 million verdict for the infant plaintiff to compensate him for catastrophic burns he suffered as a result of a gasoline fire started by other children with whom he was playing. Defendants include two of the other children, and the manufacturers of the clothing the plaintiff wore; the clothing is said to have aggravated the plaintiff's burns.

The plaintiff settled with four defendants one year prior to trial for a total of $900,000. No apportionment of fault was made by the jury with respect to the defendants who settled prior to trial. While the jury was deliberating, defendant Union Underwear Co. settled with plaintiff on a "high-low" basis, agreeing to pay $100,000, plus up to an additional $400,000 to insure plaintiff's recovery of at least $500,000 against Union and the other remaining defendant, Billy the Kid, Inc. Defendants Robert and Thomas Niske also settled prior to the verdict for $100,000. That left defendant Billy the Kid as the sole remaining nonsettling defendant.

The jury then returned its $2.6 million verdict. The jury apportioned fault 30% to the Niske defendants, 35% to Union Underwear, and 35% to Billy the Kid. At this point, the trial court reduced the verdict against the remaining defendant, Billy the Kid, to $10,000. The reduction was accomplished in accordance with what the trial court believed to be the requirement of General Obligations Law § 15-108 (a), the text of which follows: "(a) Effect of release of or covenant not to sue tortfeasors. When a release or a covenant not to sue or not to enforce a judgment is given to one of two or more persons liable or claimed to be liable in tort for the same injury, or the same wrongful death, it does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms expressly so provide, but it reduces the claim of the releasor against the other tortfeasors to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, or in the amount of the released tortfeasor's equitable share of the damages under article fourteen of the civil practice law and rules, whichever is the greatest."

The trial court computed the credit provided for in subdivision (a) by first reducing the verdict by $1,690,000, representing the combined 65% share of fault assessed by the jury against the defendants Robert and Thomas Niske and Union Underwear; in each case the settling defendant's equitable share was greater than the amount paid in settlement. That left $910,000, from which the court subtracted the pretrial settlements totaling $900,000. As noted, the sole remaining nonsettling defendant, Billy the Kid, was required to pay only $10,000, despite being assessed 35% of the apportioned fault.

We do not think that this result, virtually exonerating the nonsettling defendant notwithstanding its substantial share of fault, and, at the same time, markedly reducing the recovery to which the severely injured plaintiff established an entitlement, is required either by the language or underlying intendment of the aforecited statute.

The Legislature amended section 15-108 of the General Obligations Law in 1974 for the express purpose of encouraging settlements in the wake of the decision of the Court of Appeals in *Dole v Dow Chem. Co.* (30 NY2d 143; *see,* 1974 NY Legis Ann, at 15; *Rock v Reed-Prentice Div. of Package Mach. Co.,* 39 NY2d 34; *Mielcarek v Knights,* 50 AD2d 122, 125-126). *Dole,* of course, breaking with the preexisting rule under

which settling defendants faced no prospect of additional liability for the plaintiff's injury, held, *inter alia,* that a settling defendant could be sued by a nonsettling defendant for contribution. To counteract the disincentive to settlement posed by the prospect of an action for contribution, the Legislature provided in the 1974 amendments to section 15-108 that a nonsettling defendant would have no claim for contribution against one who had settled (§ 15-108 [b], as amended). Subdivision (a) of the amended statute sought to compensate the nonsettling defendant for the loss of the right of contribution by providing that the verdict against the nonsettling defendant would be reduced "to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, or in the amount of the released tortfeasor's equitable share of the damages under article fourteen of the civil practice law and rules, whichever is the greatest." Plainly, the credit provided to the nonsettling defendant by subdivision (a) has no defensible purpose beyond that of assuring that the nonsettlor will not be accountable for more than his equitable share of the verdict; given the overriding statutory objective of encouraging settlement, there can be no conceivable justification for applying subdivision (a) so as to reward a tortfeasor's insistence that the claim against him be reduced to judgment *(see,* Green, *General Obligations Law §15-108; An Unsettling Law,* 55 [No. 6] NY St BJ 28 [Oct. 1983]; Comment, *Repealing New York's Post-Settlement Equitable Share Reduction Scheme: An Idea Whose Time has Come,* 49 Albany L Rev 859; *see also, In re Eastern & S. Dists. Asbestos Litig.,* 772 F Supp 1380, 1393-1397 [Weinstein, J.]). Section 15-108 (a) should not be employed to create a de facto tontine.*

Bearing in mind the statute's objective of encouraging settlement without placing an inequitable burden upon the nonsettling defendant, we believe that the verdict at issue should be reduced in the following manner. First, the $2.6 million verdict should be reduced by $900,000, the aggregate amount paid in settlement one year before trial as to which no apportionment of fault was made by the jury. The remaining $1.7 million should then be reduced by 65% or $1,105,000, representing the combined apportioned share of fault of the

---

*A tontine is a financial arrangement originated by the 17th century Italian banker Lorenzo Tonti whereby participants contribute to a common fund, the benefit of which ultimately accrues only to the last survivor or those surviving at a specified time.

Niske brothers and Union Underwear who, it will be recalled, settled during the trial. This leaves a verdict of $595,000.

The essential difference between our method of reduction and that employed by the trial court is that we have reduced the verdict by the settlement amounts agreed upon prior to any apportionment of fault first, and only thereafter further reduced the verdict in accordance with the jury's apportionment. The trial court, of course, adopted precisely the reverse procedure, waiting until after reducing the verdict pursuant to the jury's apportionment to deduct the amounts paid in settlement by the defendants as to whom no apportionment was made. We think that the trial court's procedure skewed the equation. Where a defendant settles and pays money but there is no apportionment of fault, we believe that the amount paid in settlement should be deducted from the verdict before any further reduction of the verdict by other settlement amounts or equitable shares of fault. This method of computation takes into account the very substantial probability that some percentage of fault would have been attributed to the settling defendant had the issue been presented to the trier of fact, a circumstance which would, in turn, lower the percentage of fault apportioned by the jury to the other defendants, including, of course, the nonsettling defendants who are the intended beneficiaries of the subdivision (a) credit. On the other hand, our proposed method of computation does not allow a windfall to the nonsettlor by reducing the already proportionately reduced verdict *pro tanto*.

Although there is nothing in subdivision (a) which requires the verdict reduction to be accomplished in any particular order, we think it evident that the reduction should be carried out in a manner that will advance rather than defeat the statute's goals. We note that the trial court offered no convincing justification for reducing the verdict as it did. While it is true, as the court observed (147 Misc 2d 556, 560), that Union Underwear, having settled, was not entitled to a subdivision (a) credit, the issue was not really whether Union should receive a credit but whether Billy the Kid should receive a windfall at the plaintiff's expense solely by reason of having persisted in the action. Given the preeminent statutory aim of encouraging settlement, we believe that the answer to this inquiry is clear.

The difficulty in this case—that of determining the precise method by which the verdict reduction mandated by General Obligations Law § 15-108 (a) is to be computed—will doubtless

arise repeatedly in the context of litigation involving numerous settling tortfeasors. The statute, of course, by its express terms only addresses situations in which "a release * * * is given to *one* of two or more persons" (emphasis added) and so does not even purport to prescribe a universally applicable method of reduction. Indeed, the task of doing so appears all but insuperable if the statute's important objectives are not to be sacrificed in the process. There are simply too many variables to permit the formulation of a uniform method of verdict reduction that will invariably, or even predictably, yield equitable results consonant with the statute's purpose of promoting settlement. In the end then, it will be up to the courts to determine the method of verdict reduction which best promotes the statute's broad objectives. Thus, while the parties will not always know in advance precisely how the verdict reduction will be computed, they will always have the assurance that excessive compensation for the loss of the right of contribution will not be permitted to the detriment of a needy plaintiff, except insofar as the plaintiff himself has agreed to accept less than he is ultimately found entitled to pursuant to the jury's apportionment of fault.

Finally, in determining to compute the verdict reduction as we have, we have declined to accept the plaintiff's contention that the verdict be reduced by the greater of either the combined equitable share of all the settling defendants or the combined settlement amounts. Although we see no insuperable statutory obstacle to aggregating in this fashion, the method does not yield an equitable result in this case since it essentially deprives the nonsettling defendant of any credit for the $900,000 received by the plaintiff in pretrial settlements. While we decline to employ the aggregation method in the present case, we think that it might very well be appropriate in other contexts as a way to achieve the statute's goals, particularly where there has been an equitable apportionment as to all of the tortfeasors *(see, In re Eastern & S. Dists. Asbestos Litig.,* 772 F Supp, at 1393-1397, *supra).*

Accordingly, the judgment of the Supreme Court, New York County (Ira Gammerman, J.), entered on February 15, 1990, which, after a jury trial, *inter alia,* awarded plaintiff Ramsar Williams $2,600,000 against defendants Robert Niske, Thomas Niske, Union Underwear Company, Inc. and Billy the Kid, Inc., reduced a jury verdict of $2.6 million to $10,000, should be modified on the law to increase the reduced verdict to $595,000, as provided herein, and to direct that judgment

against the remaining defendant Billy the Kid be entered in that amount, and, except as so modified the judgment should be affirmed, without costs.

CARRO, ELLERIN, KASSAL and SMITH, JJ., concur.

Judgment, Supreme Court, New York County, entered on February 15, 1990, unanimously modified, on the law, to increase the reduced verdict to $595,000, and to direct that judgment against the remaining defendant Billy the Kid be entered in that amount, and, except as so modified, the judgment is affirmed, without costs or disbursements.