GERALD A. POLLICINA, as Administrator of the Estate of BAR-BARA A. POLLICINA, Deceased, Appellant, v MISERICORDIA HOSPITAL MEDICAL CENTER et al., Defendants, and HOSPITAL OF THE ALBERT EINSTEIN COLLEGE OF MEDICINE, Respondent.

First Department, February 9, 1993

218

---

## APPEARANCES OF COUNSEL

*Fred R. Profeta, Jr.,* of counsel, New York City *(Profeta & Eisenstein,* attorneys), for appellant.

*Nancy Ledy Gurren* of counsel, New York City *(Bower & Gardner,* attorneys), for respondent.

### OPINION OF THE COURT

MILONAS, J.

Plaintiff appeals from a resettled judgment which, following a jury verdict in favor of plaintiff, reduced the amount payable by defendant Hospital of the Albert Einstein College of Medicine to zero based upon setoffs pursuant to General Obligations Law § 15-108. In that regard, in this medical malpractice and wrongful death action, the jury determined that plaintiff was entitled to $5 million, apportioned 25% against Einstein, 25% against defendants Peter George Mancuso and Stephen F. Allen and 50% against defendant Frank M. Sandor. However, Mancuso and Allen had settled for $1.1 million prior to the verdict, while Sandor had settled for $650,000. Although defendant Misericordia Hospital Medical Center had settled for $50,000, its negligence was never submitted to the jury since the trial court concluded there was no liability as a matter of law. The court, upon motion, reduced the amount of the verdict to $2.2 million and then set aside the finding of liability against Einstein. On appeal, this Court reinstated the finding of liability against Einstein and otherwise affirmed (158 AD2d 194).

Defendant Einstein moved to resettle the judgment, urging that the apportionment of damages against it should be zero as a result of the setoffs from the settlements with the other defendants. Thus, Einstein contended, the $2.2 million verdict

should be lessened by the $1.1 million from the Mancuso/ Allen settlement and by another $1.1 million attributable to the finding that Sandor was 50% liable. The court, deeming this argument persuasive, decided that Einstein's share of the verdict was zero. However, the issue of how setoffs are to be applied under General Obligations Law § 15-108 was recently considered by this Court in *Williams v Niske* (181 AD2d 307, *lv granted* 186 AD2d 1099). As the Court noted therein, "[w]e do not think that [a] result, virtually exonerating the nonsettling defendant notwithstanding its substantial share of fault, and, at the same time, markedly reducing the recovery to which the * * * plaintiff established an entitlement, is required either by the language or underlying intendment of the aforecited statute" *(supra,* at 309).

In discussing section 15-108 of the General Obligations Law, the Court explained in *Williams v Niske (supra),* that this law was amended in 1974 in order to encourage settlements as a consequence of *Dole v Dow Chem. Co.* (30 NY2d 143). According to the Court *(supra,* at 310): "Subdivision (a) of the amended statute sought to compensate the nonsettling defendant for the loss of the right of contribution by providing that the verdict against the nonsettling defendant would be reduced 'to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, or in the amount of the released tortfeasor's equitable share of the damages under article fourteen of the civil practice law and rules, whichever is the greatest.' Plainly, the credit provided to the nonsettling defendant by subdivision (a) has no defensible purpose beyond that of assuring that the nonsettlor will not be accountable for more than his equitable share of the verdict; given the overriding statutory objective of encouraging settlement, there can be no conceivable justification for applying subdivision (a) so as to reward a tortfeasor's insistence that the claim against him be reduced".

Consequently, the Court in *Williams v Niske (supra,* at 311) stated that its method of reduction involved reducing "the verdict by the settlement amounts agreed upon prior to any apportionment of fault first, and only thereafter further reduc[ing] the verdict in accordance with the jury's apportionment". The Court proceeded to observe that "[a]lthough there is nothing in subdivision (a) which requires the verdict reduction to be accomplished in any particular order, we think it evident that the reduction should be carried out in a manner that will advance rather than defeat the statute's goals".

*(Supra,* at 311.) The Court in *Williams v Niske (supra,* at 312) concluded by asserting that while it had "declined to accept the plaintiff's contention that the verdict be reduced by the greater of either the combined equitable share of all the settling defendants or the combined settlement amounts", such an aggregation method "might very well be appropriate in other contexts as a way to achieve the statute's goals".

It is necessary, therefore, to ascertain the most fitting means of calculating the nonsettling defendant's share in the instant situation. Since Einstein was deemed by the jury to be 25% at fault, it is hardly equitable to reduce its portion to zero when plaintiff settled for $1,750,000 with the parties responsible for 75% of the remaining liability; 75% of the total $2.2 million award as reduced actually equals $1,650,000. In effect, plaintiff "profited" from the settlement only to the extent of attaining $100,000 more than he would have received from the jury's verdict against the various tortfeasors. To enable Einstein, a tortfeasor, to achieve an unjustified windfall at the expense of the injured plaintiff is simply unacceptable, particularly in view of the $450,000 remaining shortfall due to plaintiff. If plaintiff had settled with the tortfeasors for an amount in excess of $2.2 million, then permitting Einstein to pay nothing might conceivably have been supportable. Such an outcome, however, does not comport with the purposes of General Obligations Law § 15-108 in the present circumstances. Einstein should meet the outstanding $450,000 of the $2.2 million verdict, which is still $100,000 less than its 25% liability would otherwise have required it to pay. Finally, although plaintiff received an additional $50,000 from his settlement with Misericordia, which was never found to be liable, it would not be equitable for the tortfeasor—Einstein—to profit from this settlement at the expense of the injured party by being permitted to thereby reduce its own share of the total verdict.

Consequently, the resettled judgment of the Supreme Court, Bronx County (Alan J. Saks, J.), entered on or about May 13, 1991, which, following a jury verdict in favor of plaintiff and, after setoffs pursuant to General Obligations Law § 15-108, reduced the amount owed by defendant Hospital of the Albert Einstein College of Medicine to zero, should be modified on the law to the extent of entering judgment against Hospital of the Albert Einstein College of Medicine in the amount of $450,000 plus interest and costs, and otherwise affirmed, without costs or disbursements.

CARRO, J. P., ELLERIN, WALLACH and KUPFERMAN, JJ., concur.

Resettled judgment of the Supreme Court, Bronx County, entered on or about May 13, 1991, which, following a jury verdict in favor of plaintiff and, after setoffs pursuant to General Obligations Law § 15-108, reduced the amount owed by defendant Hospital of the Albert Einstein College of Medicine to zero, is modified, on the law, to the extent of entering judgment against Hospital of the Albert Einstein College of Medicine in the amount of $450,000 plus interest and costs, and otherwise affirmed, without costs or disbursements.