In the Matter of NEW YORK CITY ASBESTOS LITIGATION (BROOK-
LYN NAVAL SHIPYARD CASES).

First Department, February 9, 1993

**APPEARANCES OF COUNSEL**

*Steven J. Phillips* of counsel *(Diane Paolicelli, Robert I. Komitor, Alani Golanski, Moshe Maimon* and *Jerry Kristal* with him on the brief), *Levy Phillips & Konigsberg* and *Greitzer & Locks* for plaintiffs-appellants.

*Robert H. Riley* of counsel *(Schiff Hardin & Waite,* attorneys), for Owens-Illinois, Inc., defendant-appellant-respondent.

*Andrew T. Berry* of counsel *(McCarter & English,* attorneys), for Keene Corporation, and *Richard P. O'Leary* of counsel, with him on the brief *(Gordon & Silber,* attorneys), for Manville Corporation Asbestos Disease Compensation Fund, defendants-appellants-respondents.

## OPINION OF THE COURT

Rubin, J.

This action involves approximately 600 cases arising out of exposure to asbestos at the Brooklyn Navy Yard. The asbestos was contained in products manufactured and distributed by some 40 named defendants. Trial was conducted utilizing the reverse bifurcation format and proceeded first on the question of damages, resulting in a jury verdict in excess of $73,000,000. A determination was then made as to which products contributed to injuries sustained by the individual plaintiffs and liability apportioned accordingly among the responsible defendants.

■ The main issue raised by this appeal is the credit to be given to the nonsettling defendants for settlement agreements reached by other tortfeasors pursuant to General Obligations Law § 15-108. The statute provides: "(a) Effect of release of or covenant not to sue tortfeasors. When a release or a covenant not to sue or not to enforce a judgment is given to one of two or more persons liable or claimed to be liable in tort for the same injury, or the same wrongful death, it does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms expressly so provide, but it reduces the claim of the releasor against the other tortfeasors to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, or in the amount of the released tortfeasor's equitable share of the damages under article fourteen of the civil practice law and rules, whichever is the greatest."

Defendants argue that "the statute speaks in the singular", requiring that the setoff for settlements be calculated individually, that is, on a defendant-by-defendant basis, allocating to each the greater of the dollar amount of the settlement or "the amount of the released tortfeasor's equitable share of the damages" pursuant to CPLR article 14. Thus, defendants argue that the "aggregation method" of calculating offsets, advanced by plaintiffs, is inappropriate and that Supreme Court was entirely correct in refusing to apply it.

General Obligations Law § 15-108 is elegant in its conciseness of expression, reducing a potentially complex mathematical calculation to a few words. The shortcoming in the statute is that it expressly addresses the situation where a release "is given to *one* of two or more persons" (emphasis added) who are potentially liable to the plaintiff. It does not address the

situation where the plaintiff settles with two or more tortfeasors *(Williams v Niske,* 181 AD2d 307, 312, *lv granted* 186 AD2d 1099). In view of the statutory omission, the courts are left to fashion an interpretation which is consistent with the object of the statute (McKinney's Cons Laws of NY, Book 1, Statutes § 96), while avoiding an absurd result (McKinney's Cons Law of NY, Book 1, Statutes § 145). The particular outcome which the cases have attempted to avoid is the reduction of a nonsettling defendant's liability to an amount which represents far less than his proportionate share of fault as determined by the trier of fact, in some cases "virtually exonerating the nonsettling defendant" *(Williams v Niske, supra,* at 309).

As this Court recently noted in *Williams v Niske (supra,* at 311), the preeminent object of the statute is to encourage settlement. Therefore, a construction which places a nonsettling defendant in an advantageous position vis-à-vis settling tortfeasors is to be avoided. The purpose of allowing a nonsettling defendant credit for releases obtained by settling defendants is merely to ensure that a tortfeasor who proceeds to verdict is not held responsible for more than his equitable share of the plaintiff's damages *(Williams v Niske, supra,* at 310)* subject, of course, to the doctrine of joint and several liability. At the same time, the credit to be given to a nonsettling defendant should not be derived by a method which tends to undercompensate the plaintiff. That is, the plaintiff should receive the amount of his verdict reduced only insofar as the plaintiff has agreed to accept less in settlement than the share of damages attributable to the settling tortfeasors. A nonsettling defendant, however, should generally be required to contribute the full amount of his proportionate share of the damages, reduced only insofar as is required to preclude recovery by a plaintiff of more than the amount of the verdict.

Before analyzing the statute in light of these principles, two observations are in order. First, I proceed from the presumption that General Obligations Law § 15-108 can and should be uniformly applied to avoid inconsistent results (McKinney's Cons Laws of NY, Book 1, Statutes § 98) and to "yield equitable results consonant with the statute's purpose of promoting settlement" *(Williams v Niske, supra,* at 312). To this end, the plaintiff must be free from the misapprehension that settlement will be disadvantageous, and the defendant must be free from any illusion that, by proceeding to trial, exposure to liability may be greatly reduced. Second, although the parties

in *Williams* apparently presented the issue as whether to credit the nonsettling defendant with the statutory value of settlements individually (defendant by defendant) or in the aggregate *(supra)*, the method proposed by the defendant in that case is entirely inconsistent with the statute, whichever formulation is advocated. The result obtained in *Williams* should be the same whether reached by aggregating the settlements or applying them individually to the credit of the nonsettling defendant.

Cases involving verdict reduction calculations pursuant to General Obligations Law § 15-108 can be divided into two general categories, those in which the jury has allocated fault among all tortfeasors and those, such as *Williams (supra)*, in which the jury has apportioned fault only among certain nonsettling defendants. The determination of what constitutes a settling defendant's "equitable share" of the verdict within the contemplation of the statute is somewhat more involved in the latter instance, and care must be taken to avoid the pitfall into which the plaintiff in *Williams* became entrapped by the nonsettling defendant at the trial level.

In *Williams (supra)*, four tortfeasors settled with the plaintiff prior to trial for a total of $900,000. While the jury was deliberating, two additional settlements were reached, one for $100,000 and the other on a high/low basis for $100,000 up to $400,000 to ensure a combined recovery of at least $500,000 against that defendant and the remaining (nonsettling) defendant, Billy the Kid, Inc. The jury returned a verdict of $2,600,000, apportioning fault only among the three defendants who proceeded to trial and finding the nonsettling defendant Billy the Kid, Inc. 35% liable and the other two defendants 65% liable. Billy the Kid, Inc., taking liberty with both mathematical and legal theory, contended that its statutory liability was a mere $10,000. It proposed that the total verdict ($2,600,000) should first be reduced by 65%, representing the "equitable share" attributable to the settling tortfeasors ($1,690,000), to yield a remaining liability of $910,000 to be borne by the three defendants who proceeded to trial. It then proposed that the remaining liability be reduced by the amount of the pretrial settlements ($900,000) to arrive at its own asserted liability for damages of $10,000. The argument has a superficial plausibility, and Billy the Kid, Inc. was successful in limiting the judgment entered against it to this nominal amount.

The fault in this reasoning is that it seeks to offset against

liability determined on the basis of the net verdict (the verdict less the amount of pretrial settlements) a credit calculated on the basis of the gross verdict. It seeks to obtain credit for 65% of $2.6 million while liability is determined as 35% of only $1.7 million. This methodology is both illogical and mathematically indefensible. Inherent in the concept of percentage is the requirement that the total (100%) add up to a single figure of which the percentages each comprise a part. Obviously, 65% of $2,600,000 (the gross verdict) for which Billy the Kid, Inc. sought credit, when added to 35% of $1,700,000 (its equitable share of the verdict as ultimately determined by the jury) does not add up to either figure (the actual result is $2,285,000). To yield a valid result, the defendant's liability for damages and the credit received for that portion of damages contributed by settling tortfeasors must be calculated using the same principal sum.

Nor is the methodology advocated by Billy the Kid, Inc. consistent with the plain language of the statute. An amount given for a release "reduces the *claim* of the releasor against the *other tortfeasors*" (General Obligations Law § 15-108 [a]; emphasis added). Where, as in *Williams (supra),* pretrial settlements are reached with some tortfeasors, the fault to be apportioned among nonsettling defendants is comprised of the total amount of the plaintiff's damages (the gross verdict) reduced by the value of pretrial settlements. The value of a settlement is, by statute, the greater of the amount stated in the release or the amount of consideration actually paid for it. The amount recited in a stipulation of settlement may be a purely nominal sum. By the same token, the amount ultimately received by a plaintiff, due to such factors as insolvency, may be considerably less than the amount anticipated by the parties when the release was executed.

Clearly, if the *claim* of a plaintiff is reduced by an amount offered in settlement in exchange for the plaintiff's release, the equitable share of damages attributable to the nonsettling defendants is likewise reduced. The $900,000 paid in settlement prior to trial by four of the tortfeasors in *Williams v Niske (supra)* reduces the claim of the plaintiff against those defendants who proceeded to trial, and the damages attributable to those defendants are calculated on the basis of the reduced claim in accordance with the apportionment of fault by the jury. Therefore, the verdict obtained is first reduced by the amount of the pretrial settlements before calculating the

equitable share attributable to those defendants who proceeded to trial.

This is precisely the methodology applied by this Court on appeal in *Williams* (181 AD2d, *supra,* at 311). The remaining liability of $1,700,000, apportioned 35% to the nonsettling defendant Billy the Kid, Inc. and 65% to the defendants who settled with the plaintiff during the course of deliberations, provides the basis for determining the credit to be applied under the statute. The credit is the greater of the monetary value of the settlements reached by two of the three remaining defendants during jury deliberations or the equitable share of the liability attributable to those two settling defendants. In the case of either such defendant, the monetary value of the settlement ($100,000 in each instance) is considerably less than the 30% and 35% share, respectively, of the remaining $1,700,000 liability apportioned to them by the jury. Therefore, whether the nonsettling defendant received credit for the settlements individually or in the aggregate, the setoff amounts to 65% of the claim remaining to be satisfied ($1,700,000) or $1,105,000. The share of the damages for which Billy the Kid, Inc. is liable, therefore, is $595,000 *(Williams v Niske, supra,* at 311).

Where, as in the matter under review, the jury apportions fault among all tortfeasors, the situation is less complicated because the question of what constitutes the "equitable share" attributable to a defendant does not arise. In this instance, the equitable share is simply the percentage fault allocated to each defendant (adjusted, where necessary, for the fault attributable to bankrupt defendants). The issue which has proved troublesome under these circumstances is whether or not to aggregate settlements, that is, to add up the statutory value of all releases obtained from the plaintiff and compare this figure to the equitable share attributable to all settling tortfeasors for the purpose of determining the higher figure to be applied to offset the total verdict for the benefit of the nonsettling defendants.

In the case at bar, the court did not aggregate settlements but credited the nonsettling defendants with the greater of the statutory value or the proportion of fault with respect to each individual settlement *(Matter of New York City Asbestos Litig.,* 151 Misc 2d 1, 6). Plaintiffs complain that this method results in undercompensation and contend that the alternative aggregation method suffices to ensure that no nonsettling defendant will be required to pay more than its proportionate

share of the damages (subject to the principle of joint and several liability). Plaintiffs provide actual calculations for two representative plaintiffs to illustrate the point, but a simplified hypothetical will suffice by way of example.

Suppose a jury returns a verdict of $500,000 against five defendants, four of whom have entered into settlements with the plaintiff, apportioning fault against all five as shown in the following table.

| Defendant | Settlement Value | Apportioned Fault | Equitable Share |
|---|---|---|---|
| A | 0 | 15% | 75,000 |
| B | 150,000 | 25% | 125,000 |
| C | 200,000 | 30% | 150,000 |
| D | 25,000 | 0% | 0 |
| E | Nonsettling Defendant | 30% | 150,000 |

Assigning the nonsettling defendant credit for each settlement individually, $75,000 for defendant A's equitable share and $375,000 for the value of the releases obtained by defendants B, C and D, results in a total offset of $450,000, thereby reducing the liability of the nonsettling defendant to a mere $50,000. Plaintiff is undercompensated in his recovery of damages by $75,000, receiving only $425,000 out of a total verdict of $500,000. Most benefitted is defendant E who, by forcing the case to trial, has achieved the highly desirable result (from his perspective) of avoiding $100,000 of his $150,000 equitable share of the damages, as determined by the jury's apportionment of fault. As Presiding Justice Murphy emphasized in *Williams v Niske* (181 AD2d 307, 310, *supra*), this construction of General Obligations Law § 15-108 (a) operates "to reward a tortfeasor's insistence that the claim against him be reduced to judgment." Such an outcome hardly advances the statutory objective of promoting settlement in tort litigation.

Aggregation of settlements produces a far more desirable result. Under the facts hypothecated, the total value of settlements of $375,000 exceeds the equitable share of the judgment attributable to the settling defendants by $25,000 and, thus, the nonsettling defendant receives credit for $375,000. The judgment against defendant E is therefore $125,000. In these circumstances, defendant E still pays less than his equitable share of $150,000 but plaintiff is fully compensated, receiving in total the full amount of the verdict returned by the jury.

It bears emphasis that the aggregation method does not

always result in a plaintiff's receiving the full amount of the verdict. Where the amounts received in settlement are less than the equitable share collectively attributable to the settling tortfeasors, the plaintiff will be undercompensated to the same extent. Thus, if the plaintiff in the above example had accepted only $250,000 from the four settling defendants who were determined to be accountable for 70% of the damages, the nonsettling defendant would be entitled to a credit in the amount of their equitable share of $350,000 making his liability $150,000 (which, under the hypothetical facts presented, is simply his own equitable share of the verdict). The plaintiff is then undercompensated by $100,000; however, this is entirely attributable to the plaintiff's willingness to compromise for less than the full amount of liability ultimately assessed by the jury against the settling defendants and is not the result of any windfall received by the nonsettling defendant by virtue of the method of computation employed. Furthermore, this outcome encourages settlement by holding the nonsettling defendant fully liable for his proportionate share of the verdict while allowing the other defendants to reach a compromise settlement for less than their proportionate share.

Construction of the statute to require aggregation of settlements applies the same methodology to a number of settling tortfeasors, in the aggregate, as the statute expressly applies to "one of two or more persons liable or claimed to be liable" for the injury sustained (General Obligations Law § 15-108 [a]). Defendants nevertheless contend that the statute must be given its literal interpretation. Their argument relies on the statutory reference to "tortfeasor", in the singular, when determining the credit to be applied either for the value of a release "or in the amount of the released tortfeasor's [singular] equitable share of the damages". However, defendants fail to appreciate that the statute, as written, addresses only a single release given to "one of two or more persons". Therefore, the use of the word "tortfeasor's", in the singular, merely represents conformance with the grammatical rule of parallel structure and is not an expression of legislative intent. In sum, aggregation of settlements advances the purpose of General Obligations Law § 15-108 to promote settlements while adhering to its express provisions and may be uniformly applied to achieve an equitable result.

■ The discussion of allocation of damages is not complete without consideration of the treatment to be accorded to fault apportioned by the jury to bankrupt defendants. In this ac-

tion, the jury apportioned fault among all potentially liable parties, including certain defendants protected by the bankruptcy statutes. Supreme Court allocated the bankrupt defendants' shares of liability among both settling and nonsettling defendants. However, nothing in General Obligations Law § 15-108 suggests that it was intended to compromise the principle of joint and several liability in tort. The statute expressly provides that contribution may not be obtained by or from a settling tortfeasor (General Obligations Law § 15-108 [b], [c]) and allocation of a bankrupt party's share among settling defendants places that amount beyond a plaintiff's reach. As stated in the companion Federal litigation, "The plaintiff does not impliedly agree, or expect as a natural consequence of entering into a settlement, that he or she will be forced to absorb portions of causal fault attributable to nonsettling tort-feasors who are either insolvent or statutorily immune from suit" *(In re Eastern & S. Dists. Asbestos Litig., 772 F Supp 1380, 1402, affd in relevant part sub nom. In re Brooklyn Navy Yard Asbestos Litig., 971 F2d 831).* In affirming this ruling, the Second Circuit Court of Appeals noted, "Under article 14 of the C.P.L.R., non-settling defendants who pay more than their equitable share retain the right to pursue reimbursement from bankrupt or absent joint tortfeasors" (971 F2d, *supra,* at 845, citing CPLR 1401-1403). Therefore, the share of damages attributable to bankrupt defendants should be allocated only among nonsettling defendants.

As previously noted, the statutory value placed on a settlement is either the amount of consideration paid for the plaintiff's release or the amount stated therein, whichever is greater (General Obligations Law § 15-108 [a]). Certain plaintiffs who settled with defendant Fibreboard Corporation agreed to accept deferred payment of a portion of the stipulated amount, a payment designated by the parties as "Fibrebucks". On appeal, these plaintiffs argue that, for the purpose of determining its value as a setoff, the deferred portion of each settlement should be discounted to reflect that Fibrebucks represent "a contingent and uncertain obligation whose present value is problematic or slight". The statute, however, is unambiguous in placing the risk of recovery on the settling plaintiff *(In re Joint S. & E. Dist. Asbestos Litig. [Gallin v Owens-Illinois, Inc.],* 760 F Supp 33, 34-35), and leaves no room for judicial construction (McKinney's Cons Laws of NY, Book 1, Statutes § 76).

■ The joint trial of the actions of these 25 plaintiffs, and

nine others, in the "reverse bifurcation" format was entirely appropriate *(see, Jenkins v Raymark Indus.,* 782 F2d 468, 473, n 8, *reh denied* 785 F2d 1034). The joint trial format has the potential to reduce the cost of litigation, make more economical use of the trial court's time, and speed the disposition of cases *(see, Matter of City of Rochester v Levin,* 57 AD2d 700, 701) as well as to encourage settlements *(see, In re Joint E. & S. Dist. Asbestos Litig. [Findley v Blinken],* 129 Bankr 710, 815), and Supreme Court's resort to its use in this matter was not an abuse of discretion.

In 22 of the nonsettled cases, it does not plainly appear that the evidence so preponderates in favor of defendants that the verdict for the respective plaintiffs could not have been reached under any fair interpretation of the evidence *(see, Martin v McLaughlin,* 162 AD2d 181, 184), nor can it be said that causation "is left to conjecture and may be as reasonably attributed to a condition for which no liability attaches as to one for which it does" *(Smith v Squire Homes,* 38 AD2d 879, 880). Plaintiffs are not required to show precise causes of their respective damages and, in 22 of the nonsettled cases, plaintiffs showed facts and conditions from which defendants' liability may be reasonably inferred *(Juiditta v Bethlehem Steel Corp.,* 75 AD2d 126, 137).

In the *Silver* case, however, it is not disputed that crucial evidence linking the decedent to the asbestos products of defendant Owens-Illinois was hearsay testimony. Neither the trial court in its ruling nor plaintiffs in their briefs have propounded any applicable exception to the prohibition of such hearsay, and its receipt on this critical point was reversible error *(see, Echeverria v City of New York,* 166 AD2d 409, 410).

■ As plaintiffs do not dispute, prejudgment interest on future losses is no longer available under New York law *(Milbrandt v Green Refractories Co.,* 79 NY2d 26). In regard to wrongful death actions, the calculation of interest from the date of death based upon the net verdict (as reduced for settlements pursuant to General Obligations Law § 15-108) is entirely consistent with the language of EPTL 5-4.3 (a) that interest be awarded "upon the principal sum recovered by the plaintiff".

Defendant Owens-Illinois, at trial, argued against admission of a document known as the Hemeon Report *(see, George v Celotex Corp.,* 914 F2d 26, 29-30) on the ground that the report

was irrelevant to it. Only now does Owens-Illinois argue that the report is hearsay, an objection that cannot be raised for the first time on appeal *(Schiaroli v Village of Ellenville,* 111 AD2d 947, 948, n).

This Court has reviewed all of the remaining arguments presented by the parties and finds each of them to be without merit. In any event, all judgments in nonsettled cases must be remanded and resettled to reflect defendant Keene's settlement with plaintiffs in 12 cases during the pendency of this appeal.

Accordingly, 22 judgments of the Supreme Court, New York County (Helen Freedman, J.), five entered May 21, 1991, one May 22, 1991, two May 24, 1991, four May 28, 1991, five June 20, 1991, one June 22, 1991, three July 26, 1991, and one December 11, 1991, comprising all of the judgments in the instant litigation except *Galen, Osher, and Silver* which, after a three-part joint jury trial, awarded damages in favor of each of 22 individual plaintiffs in various amounts, should be modified, on the law, to the extent of deleting the component of each representing prejudgment interest on future losses, reallocating that portion of each representing allocation of the bankrupt defendants' shares only among the nonsettling defendants who appear on this appeal, and calculating the offsets pursuant to General Obligations Law § 15-108 as the greater of an aggregation of the total amount received from the settling defendants or an aggregation of the total percentage of liability attributable to the settling defendants, and each of the 22 judgments remanded for resettlement in accordance with the foregoing, taking into account as well the August 1992 settlements between defendant Keene and plaintiffs in 12 cases and, except as so modified, affirmed, without costs.

Judgment of the same court and Justice, entered May 21, 1991, in *Silver,* which, after the same joint jury trial, held defendants Owens-Illinois and Keene jointly and severally liable to that plaintiff in the amount of $1,673,187, should be reversed, insofar as defendant Owens-Illinois appeals, and the clerk directed to enter judgment in favor of Owens-Illinois dismissing the complaint in *Silver* as against it, without costs.

Appeals and cross appeals from judgments of the same court and Justice, entered May 21, 1991 in *Osher* and July 26, 1991 in *Galen,* and appeals of defendant Keene and cross appeals of plaintiffs as against Keene from judgments of the same court

and Justice entered May 21, 1991 in *Chierico, Demaria, Lyon, Raia,* and *Sufian,* May 22, 1991 in *Scorzelli,* June 22, 1991 in *Carrano,* and July 26, 1991 in *Ancewicz* and *Montgoris,* should be dismissed as academic, without costs.

SULLIVAN, J. P., MILONAS and KUPFERMAN, JJ., concur.

Twenty-two judgments of the Supreme Court, New York County, five entered May 21, 1991, one May 22, 1991, two May 24, 1991, four May 28, 1991, five June 20, 1991, one June 22, 1991, three July 26, 1991, and one December 11, 1991, comprising all of the judgments in the instant litigation except *Galen, Osher,* and *Silver* which, after a three-part joint jury trial, awarded damages in favor of each of 22 individual plaintiffs in various amounts, are modified, on the law, to the extent of deleting the component of each representing prejudgment interest on future losses, reallocating that portion of each representing allocation of the bankrupt defendants' shares only among the nonsettling defendants who appear on this appeal, and calculating the offsets pursuant to General Obligations Law § 15-108 as the greater of an aggregation of the total amount received from the settling defendants or an aggregation of the total percentage of liability attributable to the settling defendants, and each of the 22 judgments remanded for resettlement in accordance with the foregoing, taking into account as well the August 1992 settlements between defendant Keene and plaintiffs in 12 cases and, except as so modified, affirmed, without costs.

Judgment of the same court and Justice, entered May 21, 1991, in *Silver,* which, after the same joint jury trial, held defendants Owens-Illinois and Keene jointly and severally liable to that plaintiff in the amount of $1,673,187, is reversed, insofar as defendant Owens-Illinois appeals, and the clerk directed to enter judgment in favor of Owens-Illinois dismissing the complaint in *Silver* as against it, without costs.

Appeals and cross appeals from judgments of the same court and Justice, entered May 21, 1991 in *Osher* and July 26, 1991 in *Galen,* and appeals of defendant Keene and cross appeals of plaintiffs as against Keene from judgments of the same court and Justice entered May 21, 1991 in *Chierico, Demaria, Lyon, Raia,* and *Sufian,* May 22, 1991 in *Scorzelli,* June 22, 1991 in *Carrano,* and July 26, 1991 in *Ancewicz* and *Montgoris,* are dismissed as academic, without costs.