▮ JOSEPH BRUNETTI, Appellant, v RAMI MUSALLAM et al., Respondents, et al., Defendants. [873 NYS2d 554]—

Order, Supreme Court, New York County (Eileen Bransten, J.), entered April 1, 2008, which granted the motion by defendants Musallam, Klener and ThruPoint to amend their answer and by ThruPoint for summary judgment, and denied plaintiff's cross motion to amend his complaint, modified, on the law, to the extent of vacating the credit allocated to the nonsettling defendants under General Obligations Law § 15-108, and otherwise affirmed, without costs.

Plaintiff asserts that he was induced to transfer shares of ThruPoint stock to defendants Musallam, Zimmerman, Nachtigal and Klener and nonparty Rich as a result of their breach of fiduciary duty and fraud. The complaint further alleges that plaintiff's employment with ThruPoint was wrongfully terminated. Rich settled with plaintiff by returning the shares that he had received, and Zimmerman and Nachtigal settled with plaintiff for $25,000 each. Musallam, Klener and ThruPoint were permitted to amend their answer to include an affirmative defense under General Obligations Law § 15-108, which "reduces a nonsettling tortfeasor's liability to the injured party by the greater of the amount of consideration the settling tortfeasor paid for its release or, alternatively, the amount of the settling tortfeasor's equitable share of the damages under CPLR article 14" (*Chase Manhattan Bank v Akin, Gump, Strauss, Hauer & Feld*, 309 AD2d 173, 174 [2003]).

Supreme Court held that the nonsettling defendants are entitled to a credit equal to 61.5% of any damages that plaintiff might be awarded at trial, representing the percentage of the shares of ThruPoint stock that plaintiff transferred to the settling transferees. Because their culpability cannot be assessed in the absence of a verdict, and because additional findings are needed before the credit to be assigned to the nonsettling defendants under General Obligations Law § 15-108 can be calculated, the award of a credit equal to 61.5% of the transferred shares was erroneous.

The equitable share of damages attributable to released tortfeasors under General Obligations Law § 15-108 is "determined in accordance with the relative culpability of each person liable for contribution" (CPLR 1402) and is calculated using one of two methods. Where appropriate evidence is presented at trial, it is preferable to assess the fault of both settling and nonsettling defendants (*see Williams v Niske*, 81 NY2d 437, 440 n 1 [1993]). This approach simplifies the allocation of liability in that "the question of what constitutes the 'equitable share' attributable to a defendant does not arise. In this instance, the equitable share is simply the percentage fault allocated to each

defendant" (*Matter of New York City Asbestos Litig. [Brooklyn Nav. Shipyard Cases]*, 188 AD2d 214, 221 [1993], *affd for reasons stated below* 82 NY2d 821 [1993]). Essentially, the nonsettling defendants receive a credit equal to the greater of the amount of the consideration paid by the settling tortfeasors, in the aggregate, or, if greater, that portion of the verdict determined by the percentage fault allocated to the settlers. Likewise, if the culpability of all settling tortfeasors cannot be assessed, "the aggregate method of computing offsets under General Obligations Law § 15-108 (a) should be used" (*Matter of New York City Asbestos Litig. [Brooklyn Nav. Shipyard Cases]*, 82 NY2d 342, 353 [1993]). In this instance, a nonsettling defendant's equitable share of damages is calculated by reducing the verdict by the total consideration received by way of settlement and applying the percentage share of the defendant's fault to the result (*see Vazquez v City of New York*, 211 AD2d 475, 476 [1995]).

Without an allocation of fault as to those transferees of plaintiff's shares who settled his claims against them, the credit to be assigned to the nonsettling defendants cannot be calculated as a percentage of the verdict. Significantly, plaintiff places most of the responsibility for inducing the transfer of his shares on one defendant, Musallam. Furthermore, the complaint seeks additional damages (for financial benefits accruing from plaintiff's ownership of the transferred stock and lost wages resulting from the improper termination of his employment with ThruPoint), and the extent to which each of the settling transferees bears responsibility for inducing the transfer of his stock or his termination, if any, is unclear. In any event, any damages consequent to plaintiff's lost employment are not amenable to apportionment according to the distribution of his shares of stock among the various transferees.

Our decision merely holds that no determination of the credit to which the nonsettling defendants are entitled can be made at this juncture. To sustain the motion court's summary allocation of fault, each transferee of plaintiff's ThruPoint shares would have to be held culpable for damages, including loss of earned income, in proportion to that tortfeasor's ownership of transferred stock, which further presumes that the equitable share of each settling tortfeasor can be determined. At this early stage of the proceedings, such assumptions are speculative, prematurely resolving issues within the exclusive province of the trier of fact. In sum, we make no findings with respect to the computation or allocation of damages, which must be made at trial on the basis of the guidance afforded by the cited authority.

Plaintiff failed to raise a triable issue of fact to defeat ThruPoint's motion for summary judgment. Indeed, plaintiff did not allege that ThruPoint committed fraud or breached any duty owed to him, nor does the record support such claims. Furthermore, plaintiff did not contend that the shareholder defendants' alleged fraudulent scheme was carried out in furtherance of ThruPoint's interests (*see Solow v New N. Brokerage Facilities*, 255 AD2d 198 [1998]). Finally, none of plaintiff's stock was transferred to ThruPoint.

The court properly exercised its discretion in denying plaintiff's motion to amend the complaint to add a new theory of recovery, since such an amendment may not be "based on facts that would contradict [the] original theory" (*Peso v American Leisure Facilities Mgt. Corp.*, 277 AD2d 48, 49 [2000]). Notably, while plaintiff's original theory was that defendant Musallam acted on his own behalf and in concert with the other shareholders to defraud plaintiff, the proposed amended complaint completely contradicts that theory, alleging that Musallam's statements and actions were made in his capacity as ThruPoint's president and on behalf of the company.

With regard to the new damage claims sought to be added, plaintiff failed to show that the proposed amendments had merit (*see Citarelli v American Ins. Co.*, 282 AD2d 494 [2001]), and he provided no valid reason for waiting until the eve of trial to propose the amendments (*see Oil Heat Inst. of Long Is. Ins. Trust v RMTS Assoc.*, 4 AD3d 290 [2004]).

We have considered plaintiff's remaining contentions and find them unavailing. Concur—Lippman, P.J., Tom and Freedman, JJ.

McGuire, J., concurs in a separate memorandum as follows: I agree with the majority that Supreme Court correctly granted the moving defendants' motion for summary judgment dismissing the complaint against defendant ThruPoint and for leave to amend the answer of defendants Musallam and Klener to assert an affirmative defense under General Obligations Law § 15-108. I also agree that the court correctly denied plaintiff's cross motion to amend his pleadings. I agree as well that Supreme Court incorrectly determined the amount of the setoff under section 15-108 to which Musallam and Klener are entitled, but I disagree with the majority's reasoning.

In 1993 plaintiff founded Total Network Solutions, which later changed its name to ThruPoint, Inc. Plaintiff subsequently sought to expand the company's operations and invited defendants Musallam, Zimmerman, Nachtigal and Klener and nonparty Rich to join as shareholders; with the exception of

Klener, who owned 14.583% of the shares, each of the remaining shareholders owned 17.083% of the shares. The shareholders entered into an agreement in January 1996 that provided, among other things, that each shareholder held a seat on ThruPoint's board of directors; each (except for Klener) was an employee of ThruPoint and entitled to a specified salary and annual bonus; and a shareholder-employee could be terminated only under limited, narrowly defined circumstances.

According to plaintiff, in April 1998 Musallam told plaintiff that ThruPoint needed financing and that Morgan Stanley, Musallam's former employer, agreed to provide it on the following conditions: (1) that plaintiff reduce his holdings in ThruPoint from 17% of the shares to 5%; (2) that plaintiff resign from the board; and (3) that plaintiff surrender his employment rights under the shareholders' agreement and become an at-will employee. Plaintiff claims that Musallam told him that, if plaintiff did not agree to those conditions, the financing could not be secured and ThruPoint would be unable to operate. Because he did not want to see ThruPoint cease operations, plaintiff agreed to the conditions and signed an agreement on April 22, 1998 amending the shareholders' agreement to reflect the conditions. Plaintiff was subsequently terminated effective January 31, 2001.

In April 2001, plaintiff commenced this action against Musallam, Klener, Zimmerman, Nachtigal and ThruPoint, asserting causes of action for breach of fiduciary duty and fraud. Plaintiff claimed, among other things, that Musallam's statement to him in April 1998 that Morgan Stanley would not provide financing unless plaintiff agreed to the conditions was false, that Musallam knew it was false, and that plaintiff relied on it in determining to agree to the conditions. Plaintiff also claimed that, as a result of the tortious conduct, he surrendered 70% of his shares, and lost both his seat on the board and his protected employment status. Plaintiff sought damages for the fair market value of the shares he parted with, the loss of the financial benefits of ownership of those shares under the original shareholders' agreement, and salary and bonuses he would have received had he not signed the April 1998 agreement, as well as punitive damages. A cause of action for rescission of the April 1998 agreement also was asserted.[1]

In October 2007, Musallam, Klener and ThruPoint moved for summary judgment dismissing plaintiff's cause of action for re-

---

1. Supreme Court granted defendants' motion for summary judgment dismissing the complaint in its entirety, but this Court reversed and reinstated the complaint (11 AD3d 280 [2004]).

scission and the complaint against ThruPoint. Musallam and Klener also sought to amend their answer to include as an affirmative defense the setoff afforded by General Obligations Law § 15-108. With respect to that portion of the motion seeking to amend their answer to include an affirmative defense under the statute, Musallam and Klener noted that, prior to commencing this action, plaintiff settled with nonparty Rich, who returned the shares plaintiff had transferred to him in exchange for plaintiff's promise not to sue him. Additionally, after the action was commenced, plaintiff settled with Zimmerman and Nachtigal, each of whom gave plaintiff $25,000.

Plaintiff cross-moved to amend his complaint to "clarify [his] damage claims," and partially opposed Musallam, Klener and ThruPoint's motion. While plaintiff did not oppose that portion of the motion seeking summary judgment· dismissing the cause of action for rescission, he did oppose that portion of the motion seeking to amend Musallam and Klener's answer to include an affirmative defense under General Obligations Law § 15-108 to the extent they sought any offset other than $50,000, the amount plaintiff received in settling with Zimmerman and Nachtigal.

Supreme Court granted Musallam, Klener and ThruPoint's motion in its entirety, dismissing the cause of action for rescission, dismissing the complaint against ThruPoint and allowing Musallam and Klener to amend their answer to include an affirmative defense under General Obligations Law § 15-108. Regarding the amendment to the answer, Supreme Court determined that: "It is the amount of the transferred stock received by each settling wrongdoer that provides the measure of the injury caused by each one with respect to [plaintiff's] claims for damages for breach of fiduciary duty and fraud. The only equitable way to apply the statute in this type of commercial tort case, where the alleged tortfeasors each benefitted from their alleged wrongdoing in a distinct and easily calculable manner, is to reduce any award of damages for the loss of [plaintiff's] ThruPoint stock by 61.5%[, the percentage of stock that plaintiff surrendered under the April 1998 agreement that was distributed to Rich, Zimmerman and Nachtigal, the settling tortfeasors]" (19 Misc 3d 1115[A], 2008 NY Slip Op 50721[U], *3 [2008]).

Plaintiff asserts that Supreme Court erred in permitting Musallam and Klener to amend their answer to include an affirmative defense under General Obligations Law § 15-108 for any offset other than $50,000, because they waited too long to seek that relief. Plaintiff also asserts that the court misapplied the

statute in granting Musallam and Klener a setoff of 61.5% of any damages award based on the percentage of stock plaintiff surrendered that was distributed to the settling tortfeasors; plaintiff claims that the statute requires an offset based on the greater of the amount of consideration paid by the settling tortfeasors or the amount of the settling tortfeasors' equitable shares of plaintiff's damages as determined by the finder of fact.

With respect to plaintiff's first contention, because "a party may amend its pleadings to raise General Obligations Law § 15-108 as a defense at any time . . . provided that the late amendment does not prejudice the other party" (*Whalen v Kawasaki Motors Corp., U.S.A.*, 92 NY2d 288, 293 [1998]), and plaintiff was not prejudiced by the amendment, Supreme Court providently exercised its discretion in allowing Musallam and Klener to amend their answer. Although plaintiff complains that Musallam and Klener knew about the settlements long before October 2007 and concomitantly should have moved to amend their answer much sooner, plaintiff incurred no change in position or hindrance in the preparation of his case as a result of the amendment. The gravamen of plaintiff's action is that his fellow shareholders, particularly Musallam, engaged in fraudulent conduct and breached fiduciary duties owed to plaintiff, which caused him to part with shares in ThruPoint and lose both financial benefits of ownership in that entity and salary and bonuses; the amendment to Musallam and Klener's answer does not require plaintiff to steer a new course. As Supreme Court correctly observed, "th[e] affirmative defense's addition will not affect [plaintiff's] prosecution of this case, as it does not raise new issues [that] may require him to re-tune his legal strategy."

With respect to plaintiff's argument that Supreme Court erred in applying General Obligations Law § 15-108, subdivision (a) of that statute states that "When a release or a covenant not to sue . . . is given to one of two or more persons liable or claimed to be liable in tort for the same injury . . . it does not discharge any of the other tortfeasors from liability for the injury . . . unless its terms expressly so provide, but it reduces the claim of the releasor against the other tortfeasors to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, or in the amount of the released tortfeasor's equitable share of the damages under article fourteen of the civil practice law and rules, whichever is the greatest." In turn, CPLR article 14 provides that "equitable shares shall be determined in accordance with the relative culpability of each person liable for contribution" (CPLR 1402).

"CPLR 1402 uses the term 'culpability,' rather than 'fault,'

because the right of contribution may be based on no-fault torts, such as strict products liability" (Alexander, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR 1402, at 543). The rule, however, is typically described in terms of fault (*id.*, citing *Garrett v Holiday Inns*, 58 NY2d 253, 258 [1983] ["Principles allowing apportionment among tort-feasors reflect the important policy that responsibility for damages to an injured person should be borne by those parties responsible for the injury, in proportion to their respective degrees of fault"]; *see Williams v Niske*, 81 NY2d 437, 440 n 1 [1993] ["Even though a defendant in a multidefendant suit settles, proof as to the settler's fault may still be presented at trial and the settler's equitable share determined"]; 1B NY PJI3d 2:275C; *see also Whalen*, 92 NY2d at 292; *Hill v St. Clare's Hosp.*, 67 NY2d 72, 85 [1986] [the equitable share of the released tortfeasor under General Obligations Law § 15-108 is determined by assessing the damage inflicted by each tortfeasor]). "[C]ulpability . . . is expressed in terms of percentages, and the allocation is a task for the jury" (Alexander, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR 1402, at 543; *see Schipani v McLeod*, 541 F3d 158, 163 [2d Cir 2008, Wesley, J.]; 1B NY PJI3d 2:275C).

As discussed above, section 15-108 allows for a setoff of the greater of (1) the amount stated in the settlement, (2) the amount of consideration given by the settling party to the plaintiff for the settlement and (3) the amount of the settling party's equitable share of the damages. Supreme Court concluded that, under the third category, Musallam and Klener were entitled to a setoff of 61.5% of any damages award because that was the percentage of the total number of shares plaintiff transferred under the April 1998 agreement to the settling tortfeasors, Rich, Zimmerman and Nachtigal.

Supreme Court erred in affording Musallam and Klener that setoff because the percentage of shares received by the settling parties does not represent the relative culpability, i.e., fault, of those parties. In fact, plaintiff claims that Musallam was principally (if not exclusively) at fault for defendants' tortious conduct because he made the false representations to plaintiff that led plaintiff to surrender the majority of his shares in ThruPoint and agree to terms of employment that were far less favorable to him than the terms of the original shareholders' agreement. Moreover, plaintiff does not claim that his damages were limited to the amount of shares he lost as a result of the April 1998 agreement. Rather, plaintiff seeks damages for the fair market value of the shares he parted with, the loss of the

financial benefits of ownership of those shares under the original shareholders' agreement, and salary and bonuses he would have received had he not signed the April 1998 agreement. Merely because the settling parties possessed a certain percentage of the shares plaintiff surrendered does not necessarily mean that they caused that percentage of the damages plaintiff sustained. At bottom, there is no correlation between the amount or the value of the shares received by each of the settling parties and the amount of damages, i.e., the equitable share of the damages, for which each of those parties is responsible. Rather, a jury must weigh the relative culpability of the various parties that participated in the tortious conduct and apportion fault among them. That jury determination is critical in determining the amount of the setoff to which Musallam and Klener are entitled under the relative culpability setoff. Accordingly, Supreme Court should have simply allowed Musallam and Klener to amend their answer to assert an affirmative defense under General Obligations Law § 15-108 without specifying the amount of the setoff.[2]

The majority writes that *"[i]f the culpability of all settling tortfeasors cannot be assessed,* 'the aggregate method of computing offsets under General Obligations Law § 15-108 (a) should be used' (*Matter of New York City Asbestos Litig. [Brooklyn Nav. Shipyard Cases]*, 82 NY2d 342, 353 [1993])" (emphasis added). Contrary to the assertion of the majority, the application of the aggregate method does not depend on the absence of, or the inability to assess, the culpability of settling tortfeasors. In the very case the majority cites, the jury apportioned fault among the nonsettling and the settling parties (*id.* at 347) and the Court of Appeals applied the aggregate rather than the "case-by-case" or individual method (*id.* at 351; *see also Matter of New York City Asbestos Litig. [Brooklyn Nav. Shipyard Cases]*, 188 AD2d 214, 221 [1993] [applying aggregate method where "the jury apportion(ed) fault among all tortfeasors"], *affd for reasons stated below* 82 NY2d 821 [1993]; *id.* at 222 [applying aggregate method to hypothetical in which fault was apportioned by a jury among all settling and nonsettling tortfeasors]).

---

**2.** Obviously, it is of course conceivable that at trial proof may not be offered with respect to a particular settling individual (Rich or defendants Zimmerman and Nachtigal) or even with respect to all of them. Under such circumstances, "the statute cannot be applied literally" (*Williams*, 81 NY2d 437, 440 [1993]) to determine the amount of the setoff. However, any verdict against the nonsettling defendants first would be reduced by the amount of the consideration plaintiff received from Rich, Zimmerman and Nachtigal, and Musallam and Klener each would be responsible only for his equitable share of the balance (*id.* at 445).

Finally, the majority states that "[t]o sustain the motion court's summary allocation of fault, each transferee of plaintiff's ThruPoint shares would have to be held culpable for damages, including loss of earned income, in proportion to that tortfeasor's ownership of transferred stock, which further presumes that the equitable share of each settling tortfeasor can be determined." This, too, is erroneous, as the motion court's allocation of fault could not be sustained even if the stated conditions could be determined and were satisfied. Suppose, for example, that all the settling individuals were responsible for 61.5%, the percentage of the shares plaintiff transferred to the settling individuals, of all the damages, and that the percentage of responsibility for each of them and for each of the nonsettling defendants matched the percentage that each received of the shares plaintiff transferred. If the total amount that plaintiff received from the settling individuals in exchange for the releases they obtained (the sum of the $25,000 paid by Zimmerman, the $25,000 paid by Nachtigal and the value of the shares Rich transferred back to plaintiff, valued at the time they were transferred back) exceeded 61.5% of the damages awarded, the nonsettling defendants would be entitled to a credit that would exceed 38.5% of the total damages (*Matter of New York City Asbestos Litig. [Brooklyn Nav. Shipyard Cases]*, 188 AD2d at 222). Because of this additional possibility, others readily can be hypothesized, the motion court's setoff could not be sustained in any event.

As for ThruPoint's motion for summary judgment dismissing the complaint against it, I agree that it was properly granted for the reasons stated by the majority. [*See* 19 Misc 3d 1115(A), 2008 NY Slip Op 50721(U).]