OPINION OF THE COURT
 

 Hancock, Jr., J.
 

 We granted leave in this case together with two other cases
 
 (Matter of New York City Asbestos Litig. [Brooklyn Nav. Shipyard Cases],
 
 188 AD2d 214,
 
 affd
 
 82 NY2d 821 [decided herewith];
 
 Pollicina v Misericordia Hosp. Med. Ctr.,
 
 187 AD2d 217,
 
 mod
 
 82 NY2d 332 [decided herewith]) primarily to resolve a question which we have not addressed pertaining to General
 
 *345
 
 Obligations Law § 15-108 (a) as applied in an action with multiple defendants where two or more of the defendants have settled with the plaintiff prior to submission of the case to the jury.
 
 [1]
 
 This question, not answered by the plain language of the statute,
 
 [2]
 
 is: Which method for computing the amount of the General Obligations Law § 15-108 (a) offset to the jury award should be adopted: (1) the case-by-case method, under which each settling defendant is taken separately and, for that defendant, the amount of the settlement or the amount of the corresponding apportioned share, whichever is higher, is deducted from the verdict; or (2) the aggregate method, in which the settling tortfeasors are viewed collectively, the settlement amounts and the corresponding apportioned shares are totaled, and the offset is allowed for the greater of the two totals.
 

 The particular appeal before us is taken by defendant Keene Corporation (Keene), a nonsettling defendant in a multidefendant tort action arising out of plaintiffs decedent’s exposure to asbestos. The appeal turns on the effect to be given under General Obligations Law § 15-108 (a) to an agreement of settlement between plaintiff and the Manville Asbestos Disease Compensation Fund (Manville), announced in open court, which was to be effectuated by entering "a consent judgment” after the verdict. The Appellate Division has concluded with a divided court
 
 (Didner v Keene Corp.,
 
 188 AD2d 15) that this agreement did not constitute a settlement bringing General Obligations Law § 15-108 (a) into play for the reason that the agreement did not expressly release the
 
 *346
 
 tortfeasor. Thus, this holding of the Appellate Division presents a preliminary issue on which defendant Keene must prevail before the question concerning the proper method for calculating the offset can be discussed — i.e., whether the Man-ville agreement constitutes a settlement under General Obligations Law § 15-108. (a); in other words, whether General Obligations Law § 15-108 (a) applies at all. On this issue, for reasons explained hereafter in part II, we agree with defendant Keene and the dissent at the Appellate Division
 
 (id.,
 
 at 26-30) that the Manville agreement is a settlement triggering General Obligations Law § 15-108 (a).
 

 We thus reach the second issue which involves the choice between the case-by-case or the aggregate approach for determining an offset under General Obligations Law § 15-108 (a). Defendant Keene contends that the offset representing the Manville agreement should be calculated for that settling defendant separately under the case-by-case method. For reasons stated in part III, we reject defendant Keene’s argument and conclude that the aggregate method of computation, favored by the Appellate Division majority
 
 (see, id.,
 
 at 23-26), is the correct approach. The order of the Appellate Division should be modified accordingly.
 

 I
 

 Plaintiff commenced this action against 18 defendants to recover damages for wrongful death, pain and suffering and loss of consortium by reason of the death of her husband due to asbestos exposure. The trial was conducted in two stages, With the jury considering damages first and questions of liability, including apportionment of fault, second. On June 27, 1990, the jury returned a damages verdict totaling $5,867,-353, later reduced by the trial court to $3,917,353. The liability phase commenced the next day, June 28, 1990.
 

 On July 5, prior to the submission of the case to the jury, plaintiff’s counsel announced in open court that settlements had been reached with various defendants, including Man-ville. The record contains the following colloquy:
 

 "the court: The Plaintiffs in the Didner case,
 
 have settled at this time
 
 with Owens Corning, Fiberboard—
 

 "the court: We are going to lose Mr. Taber?
 

 "mr. Gordon: Fiberboard and Pittsburgh-Corning.
 

 Eagle Pitcher
 
 [sic], Manville Asbestos Disease Com
 
 
 *347
 

 pensation Fund,
 
 National Gypsum, U.S. Gypsum, GAF, and Armstrong.
 

 "We are still open against Keene, H.K. Porter and Westinghouse. We are ready to proceed.
 

 "the court: We are ready to proceed with Dr. Suzuki?
 

 "mr. cordon: Yes.
 

 "For the record,
 
 we have also resolved our differences with
 
 H.K. Porter and Southern” (emphasis added).
 

 When the case was submitted to the jury, Keene and Westinghouse Electric Corporation (Westinghouse) were the only nonsettling defendants. The jury was asked to apportion liability pursuant to General Obligations Law § 15-108 (a) among all 18 defendants — i.e., the 16 settling defendants, including Manville, which were no longer participants in the trial, in addition to Keene and Westinghouse, the only defendants still in the case. On July 10, in its liability verdict, the jury apportioned fault among 13 of the 18 defendants, finding Keene responsible for 15%, Manville for 60.167%, and all other defendants responsible for the remaining 24.833% of liability.
 
 [3]
 

 On July 23, 1990, plaintiff’s counsel presented to the trial court a proposed form of order for a consent judgment to be entered against Manville. In the letter accompanying the proposed order, plaintiff’s counsel stated,
 
 '[i]n accordance with our agreement with the Manville Asbestos Disease Compensation Fund
 
 in the above-captioned case, we enclose a proposed order awarding judgment against the Fund in the amount of $800,000” (emphasis added). The trial court signed the order memorializing the consent judgment on August 6, 1990.
 

 On February 5, 1991, a judgment against defendant Keene was filed in the total sum of $618,452, an amount equal to 15% of the reduced total verdict plus interest. The judgment did not reflect General Obligations Law § 15-108 (a) offsets for the amounts paid in settlement or the apportioned shares of the recovery for any of the settling defendants. Thereafter, defendant Keene filed objections to the judgment, contending that the court had erred in not following General Obligations Law § 15-108 (a) and in simply basing the judgment against
 
 *348
 
 Keene on its apportioned share (15%) of the recovery as reduced.
 

 In letter submissions to the court, Keene argued that the judgment should have reflected General Obligations Law § 15-108 (a) offsets computed for each of the settling defendants individually on a case-by-case basis. Under this approach, for each defendant, except for Manville, the amount to be deducted would have been the amount of the agreed upon settlement because, in each case, the settlement was greater than the corresponding apportioned share. The total of the settlements for the defendants, other than Manville, is $2,500,000. For Manville, however, its apportioned share (60.167%) of the reduced recovery ($3,917,353) is $2,356,953.80, a sum in excess of the agreed upon consent judgment of $800,000. Applying Keene’s proposed case-by-case method, the total of the settlements ($2,500,000) for the settling defendants exclusive of Manville, and the apportioned share for Manville ($2,356,953.80) are added together to compute the total offsets under General Obligations Law § 15-108 (a) ($4,856,953.80), an amount which, if deducted from the reduced recovery ($3,917,353) would more than offset plaintiff’s judgment against Keene. Keene filed a motion seeking to vacate the February 5, 1991 judgment and requested the court to enter the form of judgment it proposed using its case-by-case approach. The trial court denied this motion and adhered to the original judgment, reasoning that the Manville agreement was not a settlement within General Obligations Law § 15-108 (a) because a stay order had been issued and Manville might be precluded from paying the $800,000 consent judgment.
 

 The Appellate Division affirmed, with one Justice dissenting
 
 (Didner,
 
 188 AD2d 15,
 
 supra).
 
 The majority concluded that General Obligations Law § 15-108 (a) was inapplicable because plaintiff had not given Manville a release as part of the settlement, noting that:
 

 "subdivision (a) was amended to provide for a reduction of the verdict 'to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, or in the amount of the
 
 released tortfeasor’s
 
 equitable share of the damages * * * whichever is greatest’. (Emphasis added.) The entire thrust of the amended statute continued to focus on the actual 'release’ of another tortfeasor prior to the verdict
 
 *349
 
 as the operative event which would invoke any reduction in the litigating defendant’s liability or which would serve to insulate a discharged tortfeasor from a future claim for contribution”
 
 (id.,
 
 at 21-22).
 

 In dictum, the Appellate Division stated
 
 (id.,
 
 at 23-26) that if it had applied General Obligations Law § 15-108 (a), it would have used the aggregate method, the approach adopted or approved by the Appellate Division, First Department, in other cases
 
 (see, e.g., Matter of New York City Asbestos Litig. [Brooklyn Nav. Shipyard Cases],
 
 188 AD2d 214,
 
 affd
 
 82 NY2d 821,
 
 supra
 
 [decided herewith];
 
 Pollicina v Misericordia Hosp. Med. Ctr.,
 
 187 AD2d 217,
 
 mod
 
 82 NY2d 332,
 
 supra
 
 [decided herewith];
 
 Williams v Niske,
 
 181 AD2d 307,
 
 affd
 
 81 NY2d 437,
 
 supra)
 
 and found preferable by Judge Weinstein in various multidefendant asbestos cases pending in Federal court
 
 (see, In re Eastern & S. Dists. Asbestos Litig.,
 
 772 F Supp 1380, 1393-1397 [ED NY & SD NY 1991],
 
 affd in part and revd in part sub nom. In re Brooklyn Navy Yard Asbestos Litig.,
 
 971 F2d 831 [2d Cir 1992]). The dissent at the Appellate Division
 
 (Didner, supra,
 
 at 26-33) agreed with defendant Keene that General Obligations Law § 15-108 (a) should have been applied and that the case-by-case rather than the aggregate basis for computing the offsets is the proper approach.
 

 We granted defendant Keene’s motion for leave to appeal and now modify.
 

 II
 

 We turn first to whether the agreement between plaintiff and Manville, announced as a settlement in open court on July 5 prior to the conclusion of the case, was a settlement for purposes of General Obligations Law § 15-108 (a). There can be no question that prior to the verdict the parties and the court treated the agreement with Manville as a settlement within General Obligations Law § 15-108 (a). The remainder of the trial was conducted against Keene as one of two nonsettling defendants and, at its conclusion, the jury was asked to apportion fault against Manville as a settling defendant along with the other defendants which had settled and left the proceedings. The argument that the agreement with Manville did not trigger General Obligations Law § 15-108 (a) depends on a literal reading of the statute as applying only when the
 
 *350
 
 settling tortfeasor has actually received a release in exchange for payment of the stipulated settlement sum.
 

 In support of this construction of the statute, plaintiff points to the language in General Obligations Law § 15-108 (a) which provides for a reduction of the verdict "to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, or in the amount of the
 
 released tortfeasor’s
 
 equitable share of the damages * * * whichever is the greatest” (General Obligations Law § 15-108 [a]; emphasis added). She contends that the plain wording of the statute compels this restrictive application. We disagree. Such a literal interpretation ignores the realities of trial practice: that settlements made in open court during trial, although fully binding
 
 (see,
 
 CPLR 2104;
 
 Matter of Dolgin Eldert Corp.,
 
 31 NY2d 1), are seldom formally consummated by the actual payment of the agreed sum in exchange for a release until after the trial has ended. We should not ascribe to the Legislature the intent of imposing the unreasonable requirement that the trial court must hold up the proceedings until all of the settling defendants actually have releases in hand before any effect may be given to the settlements of the defendants under General Obligations Law § 15-108 (a). A construction of a statute which leads to such unreasonable result should be avoided
 
 (see, New York State Bankers Assn. v Albright,
 
 38 NY2d 430, 436-437; McKinney’s Cons Laws of NY, Book 1, Statutes § 143, and § 111, at 226 [to the effect that "the literal meanings of words are not to be adhered to or suffered to defeat the general purpose and manifest policy intended to be promoted”]).
 

 Just as in the case of a release not delivered until after completion of the trial, the fact that plaintiff and Manville formalized their open court settlement by entering a consent judgment after the trial verdict is of no moment. As stated by the dissenting Justice at the Appellate Division:
 

 "A judgment would, of course, effectively end any action. The date of this purported 'consent judgment’, again emphasized by the majority opinion, is of no importance, since the written agreement simply memorialized what had been agreed upon by the plaintiff and defendant Manville on July 5, 1990 in open court, and the settlement was effective as of that date.”
 
 (Didner, supra,
 
 at 29 [Asch, J., dissenting];
 
 see, Lettiere v Martin El. Co.,
 
 62
 
 *351
 
 AD2d 810, 814-815,
 
 affd for reasons stated at App Div
 
 48 NY2d 662.)
 

 We have considered and rejected plaintiffs other contentions concerning the operative effect of the Manville agreement under General Obligations Law § 15-108 (a), including the argument that defendant Keene did not make timely and adequate objection to the entry of the February 5, 1991 judgment against it.
 

 Ill
 

 The question of which method of calculating offsets under General Obligations Law § 15-108 (a) for the settlement amounts or corresponding apportioned shares of the settling tortfeasors has been addressed extensively in opinions at the Appellate Division
 
 (see particularly, Matter of New York City Asbestos Litig., supra; and Didner, supra,
 
 at 23-26) and in Federal court
 
 (see, In re Eastern & S. Dists. Asbestos Litig., supra,
 
 at 1393-1397). As stated, under the aggregate approach, the verdict is reduced either by the total of the dollar amounts to be paid by the settling defendants or the total dollar amounts of their corresponding shares of the verdict, allocated in accordance with their apportioned liability, whichever is greater. Under the case-by-case approach — sometimes referred to as the "pick-and-choose” method — each settling defendant is viewed individually and the amount of the settlement for that defendant or the amount of the corresponding apportioned share of the verdict, whichever is higher, is deducted.
 

 We agree with the conclusion reached by the above-mentioned courts that the aggregate method is preferable. It promotes the general purpose of General Obligations Law § 15-108 (a) of encouraging settlements and "assuring that a nonsettling defendant does not pay more than its equitable share”
 
 (Williams,
 
 81 NY2d, at 443,
 
 supra).
 
 At the same time, it avoids the potential injustice that the case-by-case method of computing offsets can produce — i.e., that a nonsettling defendant will be permitted to take advantage of the settlements of the apportioned shares of the settling defendants so as to reduce the amount that it pays below its equitable share by cutting the compensation the jury has awarded to plaintiff.
 

 This is precisely the consequence of adopting defendant Keene’s argument and applying the case-by-case method here. Keene, found by the jury to be responsible for 15% of the reduced recovery of $3,917,353, pays nothing; plaintiff, al
 
 *352
 
 though entitled to compensation in the amount of $3,917,353, gets nothing beyond the $3,300,000, the total of the settlements including the $800,000 to be paid by Manville. Thus, we agree with the majority at the Appellate Division that:
 

 "where the verdict is reduced by either the total dollar amount of all payments received by plaintiff in return for releases or the total dollar value of the percentages of fault allocated to the settling tortfeasors, whichever aggregation is greater — is the preferable method since under such calculation defendants would not be compelled to absorb more than their equitable share of liability and plaintiffs would not obtain any windfall benefit thereby serving the statute’s primary goals of encouraging settlements and preserving
 
 Dole’s
 
 equitable fault-sharing principles.
 
 (In re Eastern & S. Dists. Asbestos Litig., supra,
 
 at 1393.)”
 
 (Didner, supra,
 
 at 25.)
 

 Defendant Keene maintains, nonetheless, that the wording of General Obligations Law § 15-108 (a) requires the application of the case-by-case method. This is the only permissible construction, it is argued, because the statute speaks throughout in the singular and refers to the reduction of the injured party’s claim for
 
 one settlement
 
 when
 
 "a release or a covenant
 
 not to sue or not to enforce a judgment is given
 
 to one
 
 of two or more persons liable or claimed to be liable in tort for the same injury, or the same wrongful death” (General Obligations Law § 15-108 [a] [emphasis added]). We find no merit in the argument. Nothing in the statute specifies how it should be applied in a case where the plaintiff, before the case is concluded, settles with
 
 two or more
 
 of the defendants. The statute simply does not address this situation. As pointed out by the Appellate Division in
 
 Matter of New York City Asbestos Litig.
 
 (188 AD2d 214,
 
 affd 82
 
 NY2d 821,
 
 supra
 
 [decided herewith]) in rejecting the same argument:
 

 "In view of the statutory [failure to address the case of settlements with multiple defendants], the courts are left to fashion an interpretation which is consistent with the object of the statute (McKinney’s Cons Laws of NY, Book 1, Statutes § 96), while avoiding an absurd result (McKinney’s Cons Laws of NY, Book 1, Statutes § 145). The particular outcome which the cases have attempted to
 
 *353
 
 avoid is the reduction of a nonsettling defendant’s liability to an amount which represents far less than his proportionate share of fault as determined by the trier of fact, in some cases 'virtually exonerating the nonsettling defendant’ ”
 
 (id.,
 
 at 218).
 

 Accordingly, the aggregate method of computing offsets under General Obligations Law § 15-108 (a) should be used. Manville’s apportioned share (60.167%) of the reduced recovery ($2,356,953.80) when added to the total of the apportioned shares of the other settling defendants ($976,047.70) makes a total of $3,333,001.50 for the apportioned shares of all the settling defendants. This sum is greater than the total of the settlements, including Manville’s, which is $3,300,000. Therefore, $3,333,001.50 should be deducted from the recovery of $3,917,353 leaving the sum of $584,351.50.
 

 The order of the Appellate Division should be modified, with costs to plaintiff, and the matter remitted to Supreme Court, New York County, for further proceedings in accordance with the opinion herein and, as so modified, affirmed.
 

 Chief Judge Kaye and Judges Simons, Titone, Bellacosa, Smith and Levine concur.
 

 Order modified, etc.
 

 [1]
 

 . In
 
 Williams v Niske
 
 (181 AD2d 307,
 
 affd
 
 81 NY2d 437) this Court recently reviewed a question of how to apply General Obligations Law § 15-108 (a) in a multiple defendant tort action. We did not, however, decide the precise question presented here, whether the aggregate or case-by-case method of computing offsets under General Obligations Law § 15-108 (a) is preferable.
 

 [2]
 

 . General Obligations Law § 15-108 (a) ("Release or covenant not to sue”) provides: "Effect of release of or covenant not to sue tortfeasors. When a release or a covenant not to sue or not to enforce a judgment is given to one of two or more persons liable or claimed to be liable in tort for the same injury, or the same wrongful death, it does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms expressly so provide, but it reduces the claim of the releasor against the other tortfeasors to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, or in the amount of the released tortfeasor’s equitable share of the damages under article fourteen of the civil practice law and rules, whichever is the greatest.”
 

 [3]
 

 . Westinghouse was exonerated by the jury which answered that it had not contributed in any degree to plaintiffs decedent’s condition.