18 F.3d 126
 In re JOINT EASTERN DISTRICT AND SOUTHERN DISTRICT ASBESTOS LITIGATION
James BAUMAN; John Caliendo; Victor E. Dacey; Daniel
Fischer; Paul F. Fiumano; George Gewirts; Abe Goldberg;
Daisy Johnson; John Morgan; Gregory Pirozzi; Michael
Rafaniello; Leonard Saks; Salvatore Tecchio; Thomas
Walsh, Plaintiffs-Appellees,
v.
KEENE CORPORATION and Owens-Illinois, Inc., Defendants-Appellants.
 No. 245, Docket 93-7346.
 United States Court of Appeals,
Second Circuit.
 Argued Sept. 15, 1993.
Decided March 2, 1994.
 
 Richard P. O'Leary, Newark, New Jersey (Andrew T. Berry, Kevin J. Connell, E. Johanna Gibbon, McCarter & English, Newark, New Jersey, of counsel), for defendants-appellants.
 Alani Golanski, New York, New York (Steven J. Phillips, Levy Phillips & Konigsberg, New York, New York; Jerry Kristal, Greitzer & Locks, Philadelphia, Pennsylvania; Michael Ponterio, Lipsitz Green Fahringer Roll Salisbury & Cambria, Buffalo, New York; Abby Resnick, Sullivan & Liapakis, New York, New York, of counsel), for plaintiffs-appellees.
 Before: LUMBARD, OAKES, and MAHONEY, Circuit Judges.
 MAHONEY, Circuit Judge.
 
 
 1
 Defendants-appellants Keene Corporation ("Keene") and Owens-Illinois, Inc. ("Owens") (collectively "Appellants") appeal from judgments entered in the United States District Courts for the Eastern and Southern Districts of New York, Jack B. Weinstein, Judge, pursuant to the mandate issued by this court in In re Brooklyn Navy Yard Asbestos Litigation (Joint Eastern and Southern District Asbestos Litigation), 971 F.2d 831 (2d Cir.1992) ("Brooklyn Navy Yard II "). Appellants claim that in molding the verdicts into judgments after the remand from this court, the district court (1) improperly calculated the amount of the setoff for settlements required by New York General Obligations Law Sec. 15-108(a) (McKinney 1989)[1] ("GOL Sec. 15-108(a)") by employing the "aggregation" method rather than the "defendant-by-defendant" method; and (2) in determining prejudgment interest in wrongful death cases pursuant to Estates, Powers & Trusts Law Sec. 5-4.3(a) (McKinney Supp.1994)[2] ("EPTL Sec. 5-4.3(a)"), erroneously added prejudgment interest to the verdicts before subtracting settlement credits.
 
 
 2
 The prior opinions of both the district court, In re Eastern and Southern Districts Asbestos Litigation, 772 F.Supp. 1380 (E. & S.D.N.Y.1991) ("Brooklyn Navy Yard I "), modified, 971 F.2d 831 (2d Cir.1992), and this court, Brooklyn Navy Yard II, have extensively detailed the facts relevant to this appeal. We assume familiarity with these opinions.
 
 
 3
 Our opinion in Brooklyn Navy Yard II (1) directed the district court upon remand to mold the verdicts into judgments in accordance with a then-pending New York state court decision that subsequently approved the "aggregation" method, see Didner v. Keene Corp., 188 A.D.2d 15, 25, 593 N.Y.S.2d 238, 245 (1st Dep't) ("Didner I "), affirmed as modified, 82 N.Y.2d 342, 624 N.E.2d 979, 604 N.Y.S.2d 884 (1993) ("Didner II "), and (2) affirmed the district court's decision to calculate prejudgment interest on the entire verdicts before subtracting the setoffs for settlements. See Brooklyn Navy Yard II, 971 F.2d at 850-52. The district court accordingly employed the "aggregation" method to calculate the setoffs, added prejudgment interest to the verdicts before subtracting the setoffs for settlements, and entered judgments.
 
 
 4
 We conclude that the "aggregation" method was properly applied by the district court. However, although we previously affirmed the district court's decision to calculate prejudgment interest on the entire verdicts before subtracting the setoffs for settlements, upon further reflection in light of the New York Court of Appeals decision in Didner II, we conclude that this approach is not entirely consistent with New York law. Accordingly, we affirm with respect to the district court's utilization of the "aggregation" method, but vacate and remand with respect to the calculation of prejudgment interest.
 
 Background
 
 5
 This appeal arises from the extensive products liability litigation over injuries caused by exposure to asbestos in New York. After the Eastern and Southern Districts of New York had consolidated all the asbestos cases filed in either district, Judge Weinstein presided over a series of settlements and jury trials in which plaintiffs sued for injuries and wrongful death allegedly caused by exposure to asbestos during the course of their (or their decedents') employment at the Brooklyn Navy Yard. See Brooklyn Navy Yard I, 772 F.Supp. at 1384. Following jury verdicts against the nonsettling defendants, Keene and Owens, the district court molded those verdicts into judgments, following the "tortuous course" prescribed by New York law. See Brooklyn Navy Yard II, 971 F.2d at 836. Appellants and the plaintiffs appealed, challenging, inter alia, the process by which the district court molded the verdicts into judgments. See id. As relevant here, the questions before this court on the previous appeal were: (1) whether the setoffs by which verdicts against nonsettling defendants are reduced to take into account settlements previously received by the plaintiff, pursuant to GOL Sec. 15-108(a), should be calculated using the "aggregation" method or the "defendant-by-defendant" method, see 971 F.2d at 850-51; and (2) whether, in wrongful death cases governed by EPTL Sec. 5-4.3(a), prejudgment interest should be calculated upon the entire verdicts or only upon the net verdicts remaining after setoffs for settlements are subtracted. See id. at 852.
 
 
 6
 Although it believed the "aggregation" method to be analytically more sound, the district court had applied the "defendant-by-defendant" method because it interpreted New York lower court precedent as requiring that result. See id. at 850. We remanded on this issue, directing the district court to "reconsider[ ] in light of the First Department's anticipated decision in [Didner I ]." Id. at 851.
 
 
 7
 The district court had added prejudgment interest to the wrongful death verdicts before subtracting the setoffs for settlements required by GOL Sec. 15-108(a), thus awarding prejudgment interest on the entire verdicts rather than only upon the amounts remaining after the setoffs. See id. at 852. We concluded that adding prejudgment interest before subtracting the setoffs was required by New York law, and accordingly affirmed the district court's determination of this issue. See id.
 
 
 8
 On remand, in accordance with the opinion of this court and consistent with the First Department's decision in Didner I, the district court molded the verdicts into judgments by (1) applying the "aggregation method" to determine the amount of the setoffs for prior settlements, and (2) calculating prejudgment interest on the entire verdicts before subtracting the setoffs for settlements.
 
 
 9
 This appeal followed.
 
 Discussion
 
 10
 On this appeal, we address the proper methods by which to calculate: (1) the setoff resulting from settlements by multiple defendants pursuant to GOL Sec. 15-108(a); and (2) prejudgment interest in wrongful death cases pursuant to EPTL Sec. 5-4.3(a) when verdicts occur following settlements. New York law provides the rules of decision in this diversity case.
 
 
 11
 A. The Calculation of Setoffs Pursuant to GOL Sec. 15-108(a).
 
 
 12
 The issue of statutory interpretation that we initially address is posed because GOL Sec. 15-108(a) explicitly refers to a settlement reached with one of two or more joint tortfeasors, see supra note 1; "[i]t does not address the situation where the plaintiff settles with two or more tortfeasors." In re New York County Asbestos Litig.; Brooklyn Naval Shipyard Cases (Ancewicz), 188 A.D.2d 214, 217-18, 593 N.Y.S.2d 43, 46 (1st Dep't) (citation omitted, emphasis added), aff'd, 82 N.Y.2d 821, 625 N.E.2d 588, 605 N.Y.S.2d 3 (1993); see also Williams v. Niske, 81 N.Y.2d 437, 440, 615 N.E.2d 1003, 1005, 599 N.Y.S.2d 519, 521 (1993). Thus, in the case of multiple settlements with defendants prior to a verdict, the question arises whether the GOL Sec. 15-508(a) setoff is to be determined by (1) adding the higher of the settlement figure and the equitable share determined by the factfinder for each defendant to arrive at a composite figure (the "defendant-by-defendant" method, sometimes styled the "pick-and-choose" method), or (2) aggregating all the settlements and all the equitable shares, and setting off the larger of the two resulting sums (the "aggregation" method).
 
 
 13
 Didner I expressed a preference for the "aggregation" method in calculating the setoff for multiple prior settlements pursuant to GOL Sec. 15-108(a), see 188 A.D.2d at 23-25, 593 N.Y.S.2d at 243-45, but did so in dictum because it concluded that a pivotal settlement which posed the setoff issue "had not been discharged in this case prior to the entry of the final judgment," with the result that GOL Sec. 15-108(a) was inapplicable to that settlement. Id. at 22-23, 593 N.Y.S.2d at 243.
 
 
 14
 Subsequent to the argument of this appeal, the issue was definitively resolved in Didner II. In that case, the unanimous Court of Appeals reversed the Appellate Division's ruling that GOL Sec. 15-108(a) did not apply to the pivotal settlement, see 82 N.Y.2d at 349-351, 624 N.E.2d at 982-84, 604 N.Y.S.2d at 887-89, and then held that the "aggregation" method should be employed, stating:
 
 
 15
 We agree with the conclusion ... that the aggregate method is preferable. It promotes the general purpose of General Obligations Law Sec. 15-108(a) of encouraging settlements and "assuring that a non-settling defendant does not pay more than its equitable share." (Williams, 81 N.Y.2d, at 443, 599 N.Y.S.2d 519, 615 N.E.2d 1003, supra ). At the same time, it avoids the potential injustice that the case-by-case method of computing offsets can produce--i.e., that a nonsettling defendant will be permitted to take advantage of the settlements of the apportioned shares of the settling defendants so as to reduce the amount that it pays below its equitable share by cutting the compensation the jury has awarded to plaintiff.
 
 
 16
 Didner II, 82 N.Y.2d at 351, 624 N.E.2d at 984, 604 N.Y.S.2d at 889.
 
 
 17
 Accordingly, the district court's calculation of the setoff by employing the "aggregation" method both followed the mandate of this court in Brooklyn Navy Yard II and accords with the subsequent decision of the New York Court of Appeals in Didner II squarely resolving this issue.
 
 
 18
 B. The Calculation of Prejudgment Interest Pursuant to EPTL Sec. 5-4.3(a).
 
 
 19
 In molding the jury verdicts into judgments, the district court added the prejudgment interest mandated by EPTL Sec. 5-4.3(a) prior to subtracting the GOL Sec. 15-108(a) setoffs for prior settlements. See Brooklyn Navy Yard II, 971 F.2d at 852. We affirmed this ruling, concluding that "interest must be added to the award before settlements are taken into account." Id. Appellants now contend that we should reconsider our resolution of this issue in Brooklyn Navy Yard II.
 
 
 20
 At the outset, we note that Brooklyn Navy Yard II establishes the law of the case, from which we should depart only for weighty reasons. See United States v. Adegbite, 877 F.2d 174, 178 (2d Cir.), cert. denied, 493 U.S. 956, 110 S.Ct. 370, 107 L.Ed.2d 356 (1989). However, in light of the recent New York Court of Appeals decision in Didner II, we are now better able to anticipate how the New York Court of Appeals would resolve this issue, and accordingly modify our ruling on this issue in Brooklyn Navy Yard II as hereinafter stated.
 
 
 21
 The parties have presented this court with the question whether prejudgment interest should be calculated based upon the verdict before or after setoffs are taken into account. Because we conclude that adopting either approach without modification would not comport with the policies underlying New York's verdict molding statutes, we conclude that the New York Court of Appeals would decline to do so, and would instead adopt a rule consistent with the purposes of both EPTL Sec. 5-4.3(a) and GOL Sec. 15-108(a).
 
 
 22
 Appellants argue that Duffy v. City of New York, 7 A.D.2d 988, 183 N.Y.S.2d 863 (1st Dept.1959) (mem.), in which prejudgment interest was computed after subtracting the amount of a prior settlement from the (already reduced) jury verdict, establishes that New York law requires prejudgment interest to be calculated on the amount remaining after settlement credits are subtracted. See also Ancewicz, 188 A.D.2d at 225, 593 N.Y.S.2d at 51 ("In regard to wrongful death actions, the calculation of interest from the date of death based upon the net verdict (as reduced for settlements pursuant to General Obligations Law Sec. 15-108) is entirely consistent with the language of EPTL 5-4.3 that interest be awarded 'upon the principal sum recovered by the plaintiff.' ").
 
 
 23
 We do not agree that Duffy settles the issue under New York law. In Powers v. Delaware & Hudson Railroad Corp., 13 N.Y.2d 712, 191 N.E.2d 902, 241 N.Y.S.2d 844 (1963), the Court of Appeals construed Decedent Estate Law Sec. 132, the predecessor of EPTL Sec. 5-4.3 (see EPTL Sec. 5.4-3 practice commentary (McKinney 1981)), to require that a joint tortfeasor pay interest on the entire verdict rendered against the tortfeasor and another defendant, even though the tortfeasor was required to pay only half of the principal amount of the verdict. (The tortfeasor, a trucking company, was sued under Sec. 132, while the other defendant, a railroad, was sued under the Federal Employers' Liability Act, which did not provide for the payment of prejudgment interest.) The Court of Appeals adopted the dissenting opinion in the Appellate Division, Third Department in reaching that result. See Powers v. Delaware & H.R.R., 18 A.D.2d 1045, 1046, 238 N.Y.S.2d 646, 648-49 (3d Dep't) (mem.) (Herlihy, J. & Taylor, J., dissenting), modified 13 N.Y.2d 712, 191 N.E.2d 902, 241 N.Y.S.2d 844 (1963). The Appellate Division majority opinion required the tortfeasor to pay interest on only half of the total verdict, citing Duffy and one other case in support of that ruling. See Powers, 18 A.D.2d at 1046, 238 N.Y.S.2d at 648.
 
 
 24
 We do not regard Powers as providing the definitive New York rule on the issue that we must decide. At a minimum, however, it dispels Appellants' contention that Duffy (as fortified by Ancewicz ) provides the controlling rule. Accordingly, following the lead of the Court of Appeals in Didner II, we consult the policies underlying GOL Sec. 15-108(a) and EPTL Sec. 5-4.3(a) to arrive at the resolution of this question. See Didner II, 82 N.Y.2d at 351, 624 N.E.2d at 984, 604 N.Y.S.2d at 889 ("aggregation" method preferable because it comports with purposes of GOL Sec. 15-108(a)); see also Williams, 81 N.Y.2d at 441, 615 N.E.2d at 1006, 599 N.Y.S.2d at 522 (determining GOL Sec. 15-108(a) setoff by method "most closely approximat[ing] the statutory language and purposes").
 
 
 25
 As noted supra, Didner II establishes that the policies underlying GOL Sec. 15-108(a) are to encourage settlements and assure that a nonsettling defendant pays neither more nor significantly less than its equitable share, while assuring the integrity of the compensation awarded by the jury to the plaintiff. See 82 N.Y.2d at 351, 624 N.E.2d at 984, 604 N.Y.S.2d at 889. Further, as we stated in Brooklyn Navy Yard II, EPTL Sec. 5-4.3(a) "is meant to ensure just compensation for the decedent's distributees." 971 F.2d at 852 (citing Milbrandt v. A.P. Green Refractories Co., 79 N.Y.2d 26, 35, 588 N.E.2d 45, 49, 580 N.Y.S.2d 147, 151 (1991)). In keeping with this purpose, we concluded that "interest must be added to the award before settlements are taken into account." Id.
 
 
 26
 We continue to consider this rule basically sound, but believe that it should be modified to take into account the timing of settlements and verdicts in any given case. Clearly, as the time interval increases between (1) the death forming the basis of a plaintiff's claim and (2) the rendition of judgment in plaintiff's favor, the relative proportion of prejudgment interest in any recovery increases. Presumably, the role that prejudgment interest plays in settlement negotiations increases correspondingly. For example, if a wrongful death occurred in 1970, allegedly causing $100,000 worth of damages, parties conducting settlement negotiations in 1994 would take into account not only plaintiff's prospects for recovering the $100,000, but also the fact that any recovery would include twenty-four years of prejudgment interest that would far exceed the original $100,000. Thus, a settlement in a case in which prejudgment interest is available typically incorporates both a damages component and an interest component.
 
 
 27
 The rule advanced by Appellants, requiring the calculation of interest on only the amount remaining after settlements are subtracted from a verdict, would operate to reduce or extinguish the liability of nonsettling defendants in cases with a significant delay between injury and judgment, in spite of the fact that the plaintiff(s) would not have been fully compensated. For illustration, we continue with our example, even though it encompasses a time horizon not typically encountered in civil litigation.
 
 
 28
 Suppose that the hypothetical plaintiff claimed that two defendants were liable for the $100,000. A $100,000 jury verdict would result in a judgment for plaintiff of approximately $800,000 after the addition of prejudgment interest. Assume that one defendant, estimating its liability at approximately fifty percent ($50,000 in damages and approximately $350,000 in interest) and plaintiff's probability of success at almost 100 percent, settles for $400,000. At trial, the jury finds for plaintiff and against the nonsettling defendant and returns a total verdict of $100,000. Furthermore, for the purposes of determining equitable shares, the jury apportions liability equally between the settling defendant and the nonsettling defendant. See Williams, 81 N.Y.2d at 440 n. 1, 615 N.E.2d at 1005 n. 1, 599 N.Y.S.2d at 521 n. 1 ("Even though a defendant in a multidefendant suit settles, proof as to the settler's fault may still be presented at trial and the settler's equitable share determined.").
 
 
 29
 Because the $400,000 settlement exceeds the "[settling defendant's] equitable share of the damages" (fifty percent of $100,000), the amount of the setoff required by GOL Sec. 15-108(a) is $400,000. See supra note 1; Williams, 81 N.Y.2d at 443, 615 N.E.2d at 1006-07, 599 N.Y.S.2d at 522-23 ("If the settlement amount exceeds the settling defendant's equitable share, the benefit inures to the nonsettling defendants, who are credited with the larger amount actually paid.") (citation omitted). If the settlement is subtracted before the addition of prejudgment interest, $400,000 is subtracted from the $100,000 verdict, resulting in a claim against the nonsettling defendant of negative $300,000. See GOL Sec. 15-108(a), supra note 1. Thus, (1) GOL Sec. 15-108(a) would preclude any recovery from the nonsettling defendant, and (2) there would be no basis to award any prejudgment interest pursuant to EPTL Sec. 5-4.3(a). Such a result disserves the policies underlying GOL Sec. 15-108(a) and EPTL Sec. 5-4.3(a) by unfairly reducing verdict recoveries by plaintiffs and encouraging defendants not to settle in the hope or anticipation of a windfall.
 
 
 30
 Returning to our example, if interest is added to the entire verdict before intervening settlements are taken into account, as plaintiffs desire, the $400,000 settlement would be subtracted from approximately $800,000 (verdict plus interest), resulting in a verdict against the nonsettling defendant of $400,000. The problem with this approach is less obvious. The plaintiff would presumably earn (or in any event have the opportunity to earn) interest on the $400,000 settlement from the time of the settlement until the time of the judgment, providing plaintiff with a recovery that exceeds the $800,000 benchmark by the amount of that interest.
 
 
 31
 Although the "double recovery" afforded plaintiff is to be avoided, we do not believe that the New York Court of Appeals would go so far as to adopt the method advocated by Appellants merely to avoid the possibility of a double recovery by plaintiffs. Instead, we believe that the Court of Appeals, in addressing this problem which is not resolved by the language of the statutes, would fashion a rule that avoids both of these evils.
 
 
 32
 Calculating prejudgment interest on the entire verdict, before subtracting the amount of the settlements, avoids the risk that a nonsettling defendant's liability will be reduced below its equitable share. Converting any settlement amount into judgment-time dollars by adding hypothetical prejudgment interest from the time of the settlement to the time of the judgment before subtracting the settlement amount from the verdict avoids the potential extra recovery by plaintiffs.
 
 
 33
 Accordingly, to mold verdicts into judgments in wrongful death cases pursuant to EPTL Sec. 5-4.3(a) in multidefendant tort litigation, a court should:
 
 
 34
 (1) Add to each settlement hypothetical interest at the prejudgment interest rate from the time of the settlement until the time of the judgment. This interest is hypothetical because it is added to the settlement for calculation purposes only. This step converts each settlement into judgment-time dollars.
 
 
 35
 (2) Aggregate the resulting amounts (settlements plus hypothetical interest).
 
 
 36
 (3) Add prejudgment interest to the verdict.
 
 
 37
 (4) From the total arrived at in step 3, subtract the greater of either (a) the aggregate of the settlements converted into judgment-time dollars (the result from step 2), or (b) the settling defendants' total equitable shares of liability including prejudgment interest (i.e., the percentage of liability attributed by the factfinder to all settling defendants, in the aggregate, multiplied by the result from step 3 (i.e., the verdict increased by prejudgment interest)).
 
 
 38
 (5) The amount arrived at in step 4 is the amount of the judgment against the nonsettling defendant.
 
 
 39
 This method comports with the statutory goals of encouraging settlements and fully compensating plaintiffs, but preventing excessive recoveries by plaintiffs and thereby ensuring that nonsettling defendants are not required to pay more than their equitable share of either interest or damages.
 
 Conclusion
 
 40
 The judgments entered by the district court are affirmed insofar as the setoffs were calculated pursuant to the "aggregation" method, and vacated and remanded with respect to the calculation of prejudgment interest for further proceedings consistent with this opinion. The parties shall bear their own costs.
 
 
 
 [1]
 Section Sec. 15-108(a) provides:
 When a release or a covenant not to sue or not to enforce a judgment is given to one of two or more persons liable or claimed to be liable in tort for the same injury, or the same wrongful death, it does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms expressly so provide, but it reduces the claim of the releasor against the other tortfeasors to the extent of any amount stipuleted [sic] by the release or the covenant, or in the amount of the consideration paid for it, or in the amount of the released tortfeasor's equitable share of the damages under article fourteen of the civil practice law and rules, whichever is the greatest.
 A settling defendant's equitable share of damages is the liability attributed to that defendant by the factfinder. See In re Eastern and Southern Districts Asbestos Litigation, 772 F.Supp. 1380, 1392 (E. & S.D.N.Y.1991), modified, 971 F.2d 831 (2d Cir.1992).
 
 
 [2]
 Section 5-4.3(a) provides in pertinent part:
 The damages awarded to the plaintiff may be such sum as the jury or, where issues of fact are tried without a jury, the court or referee deems to be fair and just compensation for the pecuniary injuries resulting from the decedent's death to the persons for whose benefit the action is brought.... Interest upon the principal sum recovered by the plaintiff from the date of the decedent's death shall be added to and be a part of the total sum awarded.